DALTON ET AL. *v.* BOWERS, EXECUTOR.

No. 52. Argued November 14, 1932.—Decided December 12, 1932.

*Mr. Arnold Lichtig* for petitioners.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher,* and *Messrs. Whitney North Seymour, Sewall Key,* and *John H. McEvers* were on the brief, for respondent.

Mr. JUSTICE McREYNOLDS delivered the opinion of the Court.

For twenty-five years petitioner Dalton has busied himself with physical research and invention; he has devised and patented hundreds of articles. A large income from sundry sources has enabled him to lay out considerable sums in connection with his inventions; the inventions

brought in no net profit after 1914. During the five years following 1912 he caused the organization of six separate corporations and transferred to each certain patents for exploitation. The last of these—the Dalton Manufacturing Corporation—was incorporated under the laws of New York in 1917; he paid for all the capital stock—$395,000.00; became a director, president, treasurer and controlled its affairs. No other person was financially interested. He testified that his primary purpose in this venture was to perfect his sundry models and patented articles and sell the corporate shares profitably; he thought it would be better to market such articles through the corporation, to have the business in corporate form; he considered the corporation as a branch or part of his own business as an inventor and dealer in patents, etc.— as a means to an end, an instrumentality of his purpose. Also, that he believed it essential thus to have his inventions manufactured and brought before the public; the corporations were used in order to develop and improve his inventions.

The Manufacturing Corporation promptly took over certain Dalton patents, manufactured the articles and sought to sell them. The petitioner endeavored to sell the corporate shares and thereby to obtain gain. From time to time he advanced large sums to pay debts and carry on the corporate business. These loans appeared on the books, but were not repaid. For six years credits were placed to his salary account; he withdrew nothing. In 1924 the Corporation became hopelessly insolvent and during 1925 passed out of existence. The evidence indicates losses during several preceding years. All creditors were paid by petitioner.

The Corporation and Dalton made separate returns for federal income taxes. In 1923 and 1924 he claimed large deductions—$157,035.50 and $162,309.24—on account of bad debts due from it.

In their joint income return for 1925 Dalton and his wife claimed a deduction of $395,000—the full amount paid for the then worthless shares of the Manufacturing Corporation. The Commissioner ruled that this loss occurred in 1924. Adjustments for that year showed $374,-000.00 net loss by the Daltons. The Commissioner refused to apply this upon their 1925 return because not attributable to the operation of a trade or business regularly carried on by the taxpayer. If so applied, there would have been no taxable income for that year. Payment of $56,841.32 was demanded and made under protest. This suit to recover followed.

Petitioners maintain that the $395,000.00 loss, adjudged by the Commissioner to have occurred in 1924, was sustained in a trade or business regularly carried on by Mr. Dalton; consequently, the net loss for that year—$374,078.98—should have been deducted from the 1925 income under terms of the Revenue Act of 1924, § 206 (a) and (b), and Treasury Regulations 65, Article 1621. The District Court accepted their view; the Circuit Court of Appeals held otherwise. 56 F. (2d) 16.

The latter court said [p. 18]—

" There is no justification for saying that the business of the corporation was that of the appellee. During the period the appellee dealt with the corporation as an entity. When he paid the debts of the corporation, he drew on his personal account in favor of the corporation's account and this made the corporation his debtor. Separate tax returns were filed by the corporation and by the appellee. He purchased the capital stock with the intention of disposing of it to the public. His individual time was spent in large part in matters of invention. . . . The loss now sought to be deducted was an investment which he made in the corporation and did not occur in the operation of the trade or business regularly carried on by the appellee. . . .

" By the statute, allowing the deductions and carrying over the loss for two years, Congress intended to give relief to persons engaged in an established business for losses incurred during a year of depression in order to equalize taxation in the two succeeding and more profitable years. It was not intended to apply to occasional or isolated losses. . . .

" This taxpayer did not regard the business losses of the Dalton Manufacturing Company as his loss. The loss sustained by the appellee which he seeks to charge off is a capital investment loss. The rule is well settled that the corporation will be looked upon as a legal entity. . . ."

We agree with the conclusion of the Circuit Court of Appeals and its judgment must be affirmed.

The Revenue Act of 1924, c. 234, 43 Stat. 253, 260, (U. S. C., Title 26, § 937), provides—

"Sec. 206. (a) As used in this section the term 'net loss' means the excess of the deductions allowed by section 214 or 234 over the gross income, with the following exceptions and limitations:

"(1) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business;

"(2) In the case of a taxpayer other than a corporation, deductions for capital losses otherwise allowed by law shall be allowed only to the extent of the capital gains; . . .

"(b) If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called 'second year'), and if such net loss is in excess of such net income (computed

without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called 'third year'); the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary."

In the courts below the petitioners unsuccessfully insisted that the loss upon sale of the corporate shares occurred in 1925 and should be offset against gains received during that year. Here that insistence is not renewed.

The claim of right to offset the net loss of 1924 against 1925 gains cannot prevail unless the requirements of the quoted section, Revenue Act of 1924, are met—the loss must have been " attributable to the operation of a trade or business regularly carried on by the taxpayer."

In support of their position petitioners say—

The losses of the Manufacturing Corporation were not the losses of the taxpayers. They do not seek to disregard the corporate entity, but respect it. Taken as a whole this entity constituted a part of the individual trade or business of Hubert Dalton. His trade or business was not merely that of inventing; it included exploiting of his inventions, putting them on a paying basis by developing, manufacturing, improving and selling them through corporations organized for that special purpose. All of these things formed a complete, comprehensive enterprise of which the Corporation was part. It was an instrumentality of the taxpayer's business. Consequently, the investment in the corporate shares was part of business regularly carried on.

Whether theoretically valid or not, this argument rests upon assumptions out of harmony with the facts disclosed by the record. Dalton was not regularly engaged in the business of buying and selling corporate stocks. He organized the Manufacturing Corporation and took over

all its shares with the intention of selling them at a profit. He treated it as something apart from his ordinary affairs, accepted credits for salaries as an officer, claimed loss to himself because of loans to it which had become worthless, and caused it to make returns for taxation distinct from his own. Nothing indicates that he regarded the corporation as his agent with authority to contract or act in his behalf. Ownership of all the stock is not enough to show that creation and management of the corporation was a part of his ordinary business. Certainly, under the general rule for tax purposes a corporation is an entity distinct from its stockholders, and the circumstances here are not so unusual as to create an exception.

*Affirmed.*