## AMES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2827.

Circuit Court of Appeals, First Circuit.

Dec. 15, 1933.

Burton E. Eames, of Boston, Mass. (George M. Naylor, Jr., and Tyler, Eames, Wright & Reynolds, all of Boston, Mass., on the brief), for petitioner.

J. P. Jackson, Sp. Asst. to Atty. Gen. (Pat Malloy, Asst. Atty. Gen., and J. Louis Monarch and John MacC. Hudson, Sp. Assts. to Atty. Gen., on the brief), for Commissioner.

Before WILSON and MORTON, Circuit Judges, and McLELLAN, District Judge.

MORTON, Circuit Judge.

The question is whether a loss which the petitioner incurred in 1922 by the liquidation of a corporation, called Office of Winthrop Ames, Inc., was a business loss which might be spread over the two following years, or an investment loss which could be taken only in that year. The facts are found by the Board of Tax Appeals.

For about two years prior to 1912, Ames had been engaged in the business of theatrical productions. In that year, for the purpose of avoiding what might be a disastrous liability in the event of a major catastrophe like a fire and panic in a theater operated by him, he organized the corporation referred to to take over the business. He owned all its stock; he was president of it; and he solely directed its affairs. Thereafter, until its liquidation in 1922, "the corporation was the medium through which the business of selecting and producing plays was carried on." (Findings of fact.) The corporation was financed by loans from Ames which were duly entered on its books as indebtedness to him. "His time was actively, continuously and almost exclusively devoted to its affairs and to the business of play production through the medium of the corporation." (Findings of fact.) All contracts and business undertakings were made in its name. It kept its own books; and Ames kept a separate set in which were duly entered his advances to the corporation. In 1922 the corporation owed him about $720,000; and he took judgment against it for that amount. The corporation appears to have had about $215,000 assets which were duly applied on Ames' claim. The balance, about $500,000, forms the loss here in question.

The petitioner contends that this loss resulted from the operation of a business regularly carried on by him. Revenue Act of 1921, § 204 (42 Stat. 231). The precise language of the section is: "Net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of * * * capital assets, used in the conduct of such trade or business)." Such losses are deductible "from the net income of the taxpayer," not only in the year in which they occur, but in the two succeeding years.

The principles of law involved are not seriously in doubt. If a person regularly carrying on a certain business uses a corporation solely as an adjunct to it and solely as an instrumentality or agency by which the

302

principal business is carried on, the losses of such a corporation are losses of the business of which it formed a part; and they are deductible accordingly. Huxford v. Commissioner, 20 B. T. A. 39; Heaslet v. Commissioner, 23 B. T. A. 50; Dalton v. Bowers, 287 U. S. 404, 53 S. Ct. 205, 77 L. Ed. 389; Burnet v. Clark, 287 U. S. 410, 53 S. Ct. 207, 77 L. Ed. 397.

The question, then, is whether the corporation formed by Mr. Ames was an adjunct or instrumentality of a business in theatrical production, which continued to be regularly carried on by him personally after the formation of the corporation. The findings of fact above quoted go far to answer this question in the negative. It is argued that Ames still carried on the business because he selected the plays and the players, used his experience and artistic ability on settings and scenery, exercised general direction and control of the productions, and used his own name to the public. It is contended that these activities amounted to a personal business to which the corporation was subsidiary, but that when Mr. Ames arranged salaries, or entered into contracts or business undertakings of any kind in connection with the productions, he was acting on the business of the corporation as its president. It is too thin. Mr. Ames' activities were not in fact so divided. He formed the corporation to carry on the theatrical business in which he personally had theretofore been engaged. After the corporation was organized, the intention was carried out and the principal business was turned over to it. He was not carrying on an individual business as adviser to the corporation, or director of its productions. Nothing so indicates. He was president of the corporation, and he brought to its affairs, in that capacity, his skill and taste and ability, as well as his capital.

But, even if Ames were conducting the business of producing plays through the instrumentality of the corporation, and it was still his personal business, as contended by the petitioner, the result is the same. The business showed a gain in 1921 and 1922; hence as an individual he had no loss in 1922 to be offset against his gain in 1924. The only ground on which he can claim a loss of $504,372.14 in 1922 is upon the theory that the corporation was a separate entity against which he recovered judgment, and the sum represented the accumulation of bad debts or an investment in a corporation which was doing the business. If so, it was an investment loss. He does not claim that he organized the corporation to promote more successfully his business. In fact he was more successful, as it happened, when conducting the business as an individual. If he was conducting the business through a corporate alter ego, his losses were annual losses occurring from 1912 to 1921, and the liquidating judgment represented merely the accumulation of these annual losses. Whichever way the matter be viewed, the judgment appealed from was right and must be affirmed.

The decision of the Board of Tax Appeals is affirmed.