A. P. HUNT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76099. Promulgated January 22, 1936.

*James A. O'Callaghan, Esq.*, and *Harry J. Lurie, Esq.*, for the petitioner.

*Hartford Allen, Esq.*, for the respondent.

OPINION.

TRAMMELL: This is a proceeding for the redetermination of a deficiency in income tax for the year 1931 in the amount of $32,055.48. Petitioner alleges that in the determination of this deficiency respondent erred (1) in denying the deduction from 1931 income of a "net loss" sustained in 1930 of not less than $214,601.31; (2) in not allowing as a deduction from 1931 income the sum of $43,000, which petitioner was compelled to pay in 1931 as endorser and guarantor on a note executed by the Liquid Dehydration Corporation; and (3) in not allowing as additional bad debt deductions for 1931 the sums of $6,330 and $8,407.59.

*Issue 1.—Net Loss Deduction.*

In his tax return for 1931 petitioner deducted $214,601.31 as a "net loss" brought forward from 1930. Upon audit of the return, respondent allowed $84,663.11 of the amount so claimed, and disallowed the balance of $129,938.20. Of the amount disallowed by the respondent, the principal item of $72,380 represents the admitted cost to the petitioner of stock in the Liquid Dehydration Corporation, which became worthless in 1930.

In addition to the above mentioned item involved in the net loss issue, respondent in his amended answer affirmatively alleges that in computing the amount of $84,663.11 allowed as the 1930 net loss deductible from 1931 income, he erroneously included $63,260 claimed by petitioner in his 1930 return as a bad debt arising from loans made to the Liquid Dehydration Corporation; that said amount of $63,260 was erroneously allowed *as a part of the net loss* for the reason that said item was not connected with the operation of a trade or business regularly carried on by the taxpayer, but related to transactions pertaining to the investments of the taxpayer. Respondent makes claim for increased deficiency accordingly. Also for the same reasons just stated, respondent disallowed the $72,380 representing cost of the stock owned by the petitioner in the Liquid Dehydration Corporation.

The specific question for decision here is whether, within the meaning of the taxing statute, petitioner sustained in 1930 a net loss consisting of the cost of the stock of the Liquid Dehydration Corporation in the amount of $72,380, which became worthless in that year, and the petitioner's loans to the corporation in the amount of $63,260, which likewise became worthless in said year.

At the hearing the parties stipulated that the petitioner paid $72,380 in cash for stock of the Liquid Dehydration Corporation, and the undisputed evidence shows that the corporation became wholly insolvent in 1930. Petitioner obtained a judgment against the corporation for $137,985, and all of the assets of the corporation were sold to him under execution in November 1930 for $75,000, leaving an unsatisfied deficiency in the judgment of $62,985. The corporation then being without assets, its stock was worthless.

During the period from 1914 to the taxable year, petitioner was interested through stock ownership in a number of corporations engaged in substantially the same general kind of business. In 1914 he acquired a 25 percent interest in the Consolidated Products Co., manufacturing hog and poultry feed from buttermilk. From 1921 to 1926 petitioner owned about 80 percent of the stock of this corporation and was its president and general manager. In 1924 he organized the Pure Products Co. to dehydrate milk. In 1926 he exchanged stock in the Consolidated Products Co. for stock in the National Dairy Products Corporation. In 1922 the Buttermilk Producers Co. was organized and petitioner had an interest in it. He was also interested in the Consolidated Buttermilk Corporation, the Texto Products Co., the Texto Exports Co., the Nashville Buttermilk Co., and the Ever-tite Bolt Co. He owned from 50 to 75 percent of the stock of these companies. He divided his time between the various companies in which he was interested.

The Liquid Dehydration Corporation was organized in 1927. In 1930 petitioner owned a majority of its stock and was president and general manager. He maintained a separate office where he conducted his personal business. After the Liquid Dehydration Corporation went out of business in 1930 petitioner in 1931 organized the De-Hy Products Co., which is engaged in making powdered milk. He owned 75 percent of the stock.

Petitioner testified that he was engaged in organizing and operating the various companies mentioned for the purpose of making money out of them, and also to sell out his interest in them at a profit. In 1927 he began to deal in stocks and bonds, and during each of the years 1930 and 1931 he had about 250 to 350 transactions in buying and selling securities.

In his individual office petitioner had two employees, a stenographer and a bookkeeper, who looked after his personal business.

consisting of investments in and the operation of the corporations he promoted, and also his investments in, and the buying and selling of, securities.

The statute applicable here is section 117 of the Revenue Act of 1928, which, so far as material, provides that, if any taxpayer sustains a net loss in any year attributable to the operation of a trade or business regularly carried on by the taxpayer, the amount thereof shall be allowed as a deduction in computing the net income for the succeeding taxable year.

The issue in this case, therefore, is resolved into the question whether the losses admittedly sustained by the petitioner in 1930 because of the insolvency of the Liquid Dehydration Corporation, consisting of his investment in the stock of the corporation and the loans made to the corporation, are attributable to the operation of a trade or business regularly carried on by petitioner.

Petitioner argues that he was regularly engaged in the business of organizing, developing, and operating corporations for profit, and because of the fact that he devoted a large part of his time to the management of the Liquid Dehydration Corporation, the loss of his investment in its stock and the loss of the loans made to the corporation constituted a net loss within the meaning of the statute.

In support of this contention petitioner cites and relies on the decision of the United States Circuit Court of Appeals for the Eighth Circuit, rendered August 11, 1931, in *Washburn* v. *Commissioner*, 51 Fed. (2d) 949, reversing 16 B. T. A. 1091. The cited case undoubtedly supports petitioner's contention, and reviews a number of our prior decisions to the same effect, which, for reasons presently apparent, it is unnecessary to refer to in detail here. As pointed out by the Court of Appeals for the Ninth Circuit in *McGinn* v. *Commissioner*, 76 Fed. (2d) 680, affirming our memorandum opinion entered October 27, 1933, the *Washburn* case was decided prior to and was in effect overruled by *Dalton* v. *Bowers*, 287 U. S. 404, and *Burnet* v. *Clark*, 287 U. S. 410, both of which latter cases were decided on December 12, 1932. In *Burnet* v. *Clark*, the Court of Appeals for the District of Columbia took substantially the same view of this question as did the Court of Appeals for the Eighth Circuit in the *Washburn* case, and was directly reversed by the Supreme Court.

In the *Clark* case, *supra*, the facts are materially similar to the instant case. There the taxpayer was the majority stockholder, acting head, and president of a dredging corporation, and devoted himself largely to its affairs. The corporation encountered financial difficulties, and the taxpayer endorsed its obligations to the banks. Later, he had to pay these obligations, the amount of which he lost,

and also lost large sums through the sale of his stock in the corporation. In its opinion, the Supreme Court said:

The respondent was employed as an officer of the corporation; the business which he conducted for it was not his own. There were other stockholders. And in no sense can the corporation be regarded as his alter ego, or agent. He treated it as a separate entity for taxation; made his own personal return; and claimed losses through dealing with it. He was not regularly engaged in endorsing notes, or buying and selling corporate securities. The unfortunate endorsements were no part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares.

See also *Wade L. Street et al., Executors*, 26 B. T. A. 17; affd., 67 Fed. (2d) 1012; *Joseph H. Cavedon*, 30 B. T. A. 364.

What was said by the Supreme Court in the *Clark* case, has in our opinion equal application under the facts in this case, with one possible exception. There it was stated that Clark was not regularly engaged in buying and selling corporate securities. Here petitioner contends that he was so regularly engaged. However, if petitioner was regularly engaged in such business, which we need not decide, the loss of his investment in the stock of the Liquid Dehydration Corporation was not attributable to the operation of that business. It is clear from the evidence that his investment in this stock was entirely separate and distinct from and had no connection with the operation of the business of buying and selling securities on the market. *Wade L. Street et al., Executors, supra*, p. 20.

On authority of the decisions above cited, we hold that respondent did not err in excluding from the net loss for 1930, deductible from 1931 income, the amount of $72,380 representing petitioner's investment in the stock of the Liquid Dehydration Corporation; and on the same authority we allow respondent's claim for such increased deficiency as results from including in income the amount of $63,260 representing the loans made by petitioner to the corporation to protect his investment therein, which amount was erroneously allowed by respondent in computing the net loss in controversy.

At the hearing the parties stipulated that whatever net loss the Board may determine that petitioner is entitled to deduct from his gross income for 1931 may be increased by the amount of $14,426.52. Proper adjustment, accordingly, will be made under Rule 50.

*Issue 2.—Deduction for Loss on Payment of Corporation's Note.*

Petitioner endorsed and guaranteed the payment of a note executed by the Liquid Dehydration Corporation in the original principal amount of $50,000. In 1931 petitioner was required to pay the balance then due on the note, which amounted to $43,400. This was included in the net loss deduction claimed by petitioner, but at the

hearing the parties agreed that whatever amount of loss the Board may determine is sustained by petitioner on account of the payment of the note is properly allowable as a primary deduction from gross income for 1931 rather than as a part of the net loss carried forward from 1930. Petitioner's liability as endorser on the note was secured by certain real estate owned by the corporation, which was transferred to petitioner for that purpose. The uncontroverted evidence shows that this real estate had a fair market value of $12,000 at the time of the payment of the note, and we hold, therefore, that petitioner is entitled to a deduction in the amount of $31,400.

### Issue 3.—Bad Debt Deductions.

Petitioner asserts that he is entitled to additional deductions for worthless debts in the amounts of $6,330 and $8,407.59, comprising numerous ledger accounts.

Section 23 (j) of the Revenue Act of 1928 provides that in computing net income there shall be allowed as deductions "debts ascertained to be worthless and charged off within the taxable year * * *, and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part."

Petitioner testified that at the end of 1931 he marked certain accounts shown on his ledger and told his bookkeeper to charge them off. He stated:

I wanted to charge them off in 1930, but they did not get them in, and when 1931 came along, I told my bookkeeper I wanted him to go through my books and charge off everything that was not any good, and I went over them with him and marked them * * *

Petitioner now concedes that many specific accounts were worthless in 1930 and, as to these, he has abandoned his claim for deductions in the taxable year, but the evidence, we think, is wholly insufficient to show that the remaining accounts became worthless, and were so ascertained, in 1931. However, it is not enough to show that the debts were ascertained to be worthless in the taxable year. They must also have been charged off within the taxable year, and the record affirmatively shows that this was not done in respect of any of the accounts here claimed as deductions. Petitioner himself testified unequivocally that the accounts were not charged off within the taxable year 1931 nor at any other time. He is, therefore, not entitled to the additional deductions claimed. *American Photo Player Co.*, 2 B. T. A. 419; *Warren-Smith Hardware Co.*, 7 B. T. A. 292; *Joseph H. Rudiger*, 22 B. T. A. 204; *Miles G. Saunders*, 26 B. T. A. 519; *Avery* v. *Commissioner*, 22 Fed. (2d) 6; *Duffin* v. *Lucas*, 55 Fed. (2d) 786; *Austin, Receiver* v. *Helvering*, 77 Fed. (2d) 373.

*Judgment will be entered under Rule 50.*