SAMUEL LANSKI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49347. Promulgated September 29, 1936.

*Arnold R. Baar, Esq.*, for the petitioner.
*C. R. Marshall, Esq.*, for the respondent.

## OPINION.

HILL: The first issue in this case is whether petitioner sustained a statutory net loss in 1924 which may be carried forward and deducted from gross income for 1925. The parties have stipulated that the petitioner sustained a deductible bad debt loss of $104,024.32 in 1924 on account of the worthlessness of his claim in that amount against the Fort Dearborn Furniture Co. for money loaned and advanced to the company, and that including such loss the excess of the deductions allowable to petitioner for 1924 over income amounted to $44,433.54. The parties further stipulated that if petitioner is entitled to deduct from his income for 1925 any net loss sustained in 1924 the amount is $44,433.54.

Under section 206 (a) and (b) of the Revenue Act of 1926, if a taxpayer has sustained a net loss attributable to the operations of a trade or business regularly carried on by him the amount is allowable as a deduction in computing net income for the succeeding taxable year. And subdivision (e) of the same section provides that if for the taxable year 1924 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1924, which are substantially the same as in the 1926 Act, the amount of such loss shall be allowed as a deduction in computing net income for 1925. Thus, the sole point in controversy here is whether or not the net loss admittedly sustained by petitioner in 1924 was "attributable to the operation of a trade or business regularly carried on" by him.

Respondent disallowed the claimed deduction as not within the terms of the statute, substantially taking the position that petitioner's regular business was that of a corporate executive; that he was not regularly engaged in the business of lending money, and that the loans to the furniture company, which resulted in the loss in controversy, constituted a casual transaction made to protect his investment in the corporation's stock.

The determinative questions are, first, Was petitioner engaged in promoting, managing, and financing corporate enterprises? and, second, If he was so engaged, was that a trade or business regularly carried on by him on his own behalf?

It is not sufficient that the loss be sustained in a business transaction. It must be sustained in a trade or business regularly carried on by the taxpayer. This Board has, therefore, distinguished between a business regularly carried on and a single, isolated transaction. * * * ·

The loss contemplated by the statute is an operating loss, and the party claiming it must be the operator of the trade or business in which the loss occurs. Therefore, a business regularly carried on by the taxpayer means a business regularly operated by the taxpayer on his own behalf. [*Glenn M. Averill*, 20 B. T. A. 1196.]

In *E. M. Elliott*, 15 B. T. A. 494, this Board said:

What constitutes a business has previously been considered in a number of cases. In *Oscar K. Eysenbach*, 10 B. T. A. 716, we approved definitions of "business" which we will repeat here:

Business is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict. citing *People ex rel Hoyt* v. *Tax Comrs.* 23 N. Y. 242, 244. That which occupies the time, attention and labor of men for the purpose of a livelihood or profit. 1 Bouvier's Law Dict. p. 273. Approved in *Flint* v. *Stone & Tracy*, 220 U. S. 107; *Von Baumbach* v. *Sargent Land Co.* 242 U. S. 503.

Over a period of about 25 years up to and including the year 1924, the petitioner was connected with a number of corporations as a stockholder and officer. These corporations were I. Lanski & Son

Scrap Iron Co., Great Eastern Manufacturing Co., Fort Dearborn Furniture Co., Republic Pipe & Supply Co., and the Red Point Manufacturing Co. The Illinois Pipe & Manufacturing Co. was not a corporation but a trade name established about 25 years ago and used by I. Lanski & Son Scrap Iron Co. for certain subsidiary trade purposes. Of these corporations the petitioner and two of his brothers organized the Fort Dearborn Furniture Co. in 1919, and the Republic Pipe & Supply Co. in 1920 or 1921. The Red Point Manufacturing Co. was organized by the petitioner and two other persons in 1921 or 1922. Petitioner acquired stock in the Great Eastern Manufacturing Co. in 1917, but did not organize it. The I. Lanski & Son Scrap Iron Co. was organized about 40 years ago by petitioner's father. The petitioner was a stockholder and officer in each of the corporations named, and was president and treasurer of I. Lanski & Son Scrap Iron Co., Republic Pipe & Supply Co., and the Fort Dearborn Furniture Co. He was president of the Great Eastern Manufacturing Co. and was manager of the four corporations last named. It was his duty as such officer and manager to arrange for the financing of the operations of these corporations. As an officer of the I. Lanski & Son Scrap Iron Co. petitioner received in 1924 a salary of $5,200, and in the same year he received a salary of $10,000 as an officer of the Republic Pipe & Supply Co. Neither of the other corporations was a going concern in 1924.

Petitioner initiated the idea and brought about the organization of the Fort Dearborn Furniture Co., the Republic Pipe & Supply Co., and the Red Point Manufacturing Co. He owned one-third of the stock in each of these three corporations. His two brothers owned the remainder of the stock in the Fort Dearborn Furniture Co. and the Republic Pipe & Supply Co. Frank Neal and one Larson owned the remainder of the stock in the Red Point Manufacturing Co. The petitioner owned practically all of the stock of the Great Eastern Manufacturing Co.

Pursuant to his duty as an officer petitioner arranged for bank credit to carry on the operations of all the corporations hereinabove named, except the Red Point Manufacturing Co., which continued in business for about one year only on the capital furnished therefor by petitioner at its organization. Such bank credit was secured on the personal guaranty or endorsement of the petitioner.

During the depression before the World War, petitioner personally advanced moneys to the Lanski Co. and subsequently advanced moneys to the Furniture Co. for its operations. It is the loss sustained by reason of the advancements to the Furniture Co. which is herein claimed by the petitioner as a net loss deductible from his 1925 income.

The record discloses no advancement or loan by petitioner to any other corporation. In some instances petitioner was required to repay the loans from banks secured on his personal guaranty.

In addition to his activities in connection with corporate enterprises the petitioner, over a period of about 30 years, was engaged in buying vacant real property, erecting buildings thereon, and either renting or selling same for profit. His activities in this line were on his individual account and had no connection with the business of the corporations and had no relation to his corporate connections. The petitioner neither promoted, managed, nor financed any corporations other than those in which he was a substantial stockholder; he neither guaranteed nor made loans other than to such corporations. In all of the corporations with which the petitioner was connected, except Great Eastern Manufacturing Co., persons other than petitioner had substantial stockholdings. Petitioner's two brothers, who were stockholders with him in the Fort Dearborn Furniture Co., joined him in making loans to that company.

The petitioner had two lines of business in which he was employed for profit or a livelihood. One was the management as a salaried executive officer, of certain corporations in which he was a stockholder; the other was his real estate operations. His activities in securing operating credit and in advancing money to the corporations in question were merely incidental to his obligations and duties as a corporation executive, and as such afforded him neither profit nor expectation of profit separate and apart from the business of the corporations. It is not claimed by petitioner, nor does it appear, that he received any compensation for financing corporations other than that which may have inured to him from his investments in the corporations. It does not appear that petitioner received any bonus, fee, commission or other compensation for promoting the organization of corporations.

It can not be said, therefore, that he was engaged in promoting or financing corporate enterprises for a livelihood or profit; hence, such activity of the petitioner did not constitute a trade or business. His means of livelihood or profit, as to his activities in connection with corporations, came from the salaries he received as an executive officer thereof, and his proportionate part of the earnings of such corporations, distributed as dividends, if any. His employment was that of a corporation official—that was the business regularly carried on by him; that was the employment in connection with corporations which occupied his time, attention and labor for the purpose of a livelihood or profit. We conclude, therefore, that the loss which petitioner sustained in 1924 through advancements theretofore made

to the furniture company was not sustained in a trade or business regularly carried on by him.

Respondent's action on the first issue is approved. *Dalton* v. *Bowers*, 287 U. S. 404; *Burnet* v. *Clark*, 287 U. S. 410; *Robert T. Cunningham*, 20 B. T. A. 428; *Eli Strouse*, 24 B. T. A. 748; affd., 59 Fed. (2d) 600; *Benjamin I. Powell*, 26 B. T. A. 509; *Winthrop Ames*, 27 B. T. A. 729; affd., 68 Fed. (2d) 301; certiorari denied, 292 U. S. 635; *John C. Shaffer*, 28 B. T. A. 1294; *Philip Rhinelander*, 30 B. T. A. 121; *Joseph Cavedon*, 30 B. T. A. 364.

The second issue involves the action of the respondent in including in petitioner's income for 1926 the amount of $80,000 alleged to have been received by petitioner in that year from one Isaac T. Cook as commissions on the sale of Florida real estate. The evidence conclusively shows that the $80,000 of securities passed in the transaction in question was received by Cook and not by or for the petitioner; that petitioner received only a paper equity in 3,040 acres of land and a one-half interest in a like equity in another tract of 10,100 acres. Cook held the remaining interest in the equity in the latter tract of land.

On brief respondent does not seriously contend that petitioner received the $80,000 as commissions, except possibly by constructive receipt as payment for his equities in the above mentioned lands, but respondent urges in the alternative that petitioner received taxable income in the same amount represented by the fair market value of his interest in the lands for the cancellation and release of certain contracts referred to in our findings of fact. The correctness of respondent's contention depends upon whether the interest in the lands received by petitioner had a fair market value at the time of receipt. Concededly petitioner received taxable income only to the extent of the fair market value, if any, of the equities acquired.

The evidence shows that the lands in question were encumbered by mortgages; that at the time of the transaction in 1926 the Florida land "boom" had broken and that the paper interests received by petitioner then had no fair market value in excess of the mortgages. We have so found as a fact, and there is no persuasive evidence in the record to the contrary. Neither petitioner nor Cook considered his interest in the lands of sufficient value to justify the payment of taxes.

Respondent's action on the second issue is reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*