W. H. Funke and G. G. Funke v. Commissioner.
W. H. Funke & G. G. Funke v. Commissioner
Docket No. 50356.
United States Tax Court
T.C. Memo 1955-156; 1955 Tax Ct. Memo LEXIS 183; 14 T.C.M. (CCH) 585; T.C.M. (RIA) 55156; June 16, 1955
I. Harvey Levinson, Esq., 33 North La Salle Street, Chicago, Ill., for the petitioners. Andrew Kopperud, Jr., Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax of petitioners for the calendar year 1947 in the amount of $7,019.48. The questions to be decided are (1) whether certain advances constituted loans or contributions to the capital of the Moody Brick & Tile Company; (2) whether the debt, if any, of the Moody Brick & Tile Company became worthless in 1947, and, if so, whether it was a non-business or a business bad debt; and (3) whether the stock owned by petitioner became worthless in 1947. Findings *184 of Fact A stipulation of facts was filed, which is hereby incorporated herein by reference as part of our findings. Petitioners, husband and wife, are residents of Chicago, Illinois. They filed a joint income tax return for the year 1947 with the collector of internal revenue for the first district of Illinois. W. H. Funke will hereinafter be referred to as the petitioner. Petitioner was and is a co-partner in the Consolidated Agency, which has been engaged since 1913 in the business of selling insurance primarily to railroad employees. There are eight partners in this partnership including the petitioner. The business of the partnership was adversely affected by national legislation, enacted in 1938 and subsequently supplemented, whereby railroad employees, through payroll deductions, could acquire a type of insurance which had been sold by the Consolidated Agency. Petitioner's distributive share (6.71 per cent) of the income of Consolidated Agency for 1947 amounted to $35,213.63. Prior to 1945, some of the partners, as individuals, made investments in several business enterprises which were engaged in developing a shaver, glasswax, milkweed floss products, and a freight tariff *185 book. Petitioner, as an individual, invested $600 in the milkweed floss venture and $2,000 in the freight tariff book venture. No profit was realized on these investments. Prior to 1943, the father and uncle of Edward H. Moody owned and operated as equal partners a brick and tile manufacturing plant at Carlinville, Illinois. His father died in 1943 and the plant ceased its operations. In 1945 he and the petitioner met in Chicago and discussed the formation of a partnership to purchase and operate the plant. Moody had been associated with the brick or tile business for many years but petitioner at that time had had, no experience in that business. They agreed that petitioner would invest $5,000 and Moody an equivalent amount, that they would purchase the plant, that a partnership would be formed in which they would be equal partners in the business which was to be operated under the name of the Moody Brick & Tile Company; and that a corporation would be formed at a latter date to succeed the partnership. Engineers and others told them that their capital contributions would be sufficient to operate the plant, and they were satisfied these contributions would be adequate if the plant *186 commenced operations as they hoped it would. In October 1945 the partnership was formed and the plant purchased. At that time the prospects for its successful operation appeared to be good as there was a building boom and farmers needed tile to drain their lands. Brick and tile plants do not operate during the winter. However, during the winter of 1945-1946 some preliminary work was done to prepare the plant for operation in the spring and ceramic engineers were consulted. They reported that the old air-drying system could not be used and that the plant would have to be modernized. The partnership was in existence from October 23, 1945 to February 28, 1946, and it reported a loss for this period for Federal income tax purposes of $2,109.90. The business was incorporated on March 1, 1946 under the name of the Moody Brick & Tile Company, Inc. The partnership transferred its assets to the corporation and it assumed the liabilities of the partnership. Its stock, which at all times material herein consisted of 100 shares of no par value common, was distributed to the former partners. Petitioner received 50 shares, and Edward H. Moody and his wife, Margaret E. Moody, the remaining 50. *187 Edward H. Moody was president, petitioner, vice president, and Margaret E. Moody, secretary, of the corporation, and they were also members of its board of directors. At a special meeting of the board of directors of the corporation held on March 29, 1946, the president announced that on behalf of the corporation he had borrowed funds for operating expenses and given notes to petitioner therefor, that the corporation was in need of additional funds for operating expenses, and that it would be necessary to borrow such funds. The directors adopted the following resolution: "RESOLVED that the action of E. H. Moody in borrowing funds from and giving notes for the security thereof to W. H. Funke be and the same hereby is approved and the president and secretary of this corporation be and they hereby are authorized and directed to borrow for operating expenses additional sums so that the total indebtedness to W. H. Funke shall not exceed $9,000.00, and to execute and deliver such notes of the corporation as security therefor as may be necessary. The president and secretary are authorized to borrow said sum at such times as they shall deem proper and necessary for the purposes of the *188 corporation." After the corporation was organized, the engineers recommended improvements and experiments which they estimated would cost $20,000. The corporation borrowed this amount on April 10, 1946 from the Carlinville National Bank, Carlinville, Illinois, and gave a mortgage on its property as security for the loan. Thereafter, the recommended improvements and experiments were made under the supervision of the engineers with the expectation of developing a satisfactory drying method for brick and tile. The improvements and experiments were costly and the improvements actually made were not adequate to permit the successful production of brick and tile in commercial quantities. Samples of clay from the pit was submitted to the State Geological Survey Division at Urbana, Illinois. After study of the samples it reported on November 29, 1946 that the samples were remarkably uniform and that it found nothing to indicate that the clay would be difficult to dry. Experiments and "test runs" were continued until September 1947 to see if a salable product could be produced. The results were unsatisfactory. The "test runs" disclosed a large percentage of cracks or other damage with the *189 result that the product was not salable. During the years 1946 and 1947 the corporation made some sales of the residue of the tests which proved to be salable. The percentage of salable product was so low that a profit could not be realized. The corporation also produced and sold some sand mold bricks which were made in the "old-fashioned pug mill" and air dried, but the cost of labor by this method was so high that the sales were unprofitable. However, prior to September of 1947, encouraging reports were received from the engineers indicating that the experiments being made to develop a satisfactory drying process would be successful, and these reports, and offers from prospective purchasers to purchase brick and tile when they were produced, caused Moody and the petitioner to be optimistic about the eventual successful operation of the business. In September of 1947, the ceramic engineers informed Moody that the only hope for successful operation would be to install a substantial amount of new equipment to process the clay in a completely different manner and that this would require a large outlay of money. Prior to that time petitioner had advanced money from time to time to the *190 partnership and to the corporation so that operations might be continued. Moody phoned the petitioner and told him about the suggestions of the engineers for new equipment; they discussed the failure of the various experiments and tests previously made and whether it was advisable to put more money into the business to carry on further experiments. Petitioner then told Moody that he was "at the end of his rope" and would have to stop putting any additional money into the business, and that Moody should be thinking about what he might do with the plant and whether he could interest other capital in the enterprise. On December 15, 1947, petitioner wrote the following letter to Moody: "Referring to our talk the other day when you explained the situation at the plant and the need for $11,000 more operating money to open next Spring: "As promised, I weighed the matter very carefully, almost to the exclusion of everything else during the past few days, and have decided that I just cannot go along any further. "Herewith my stock, properly endorsed. As of this date I am charging off this stock as loss; also the additional monies I put in. During our talk I told you if I decided as above, *191 I would write you accordingly relinquishing all rights and interest in the business, I consider myself entirely out of it. "You are, therefore, now in position to interest new capital without considering me or my investment whatever, in other words, your company has been thru the financial wringer to the extent of my $18,000, plus my time and expenses on trips from Chicago to the plant. "I hope you are successful in interesting new capital and put the company on its feet without my in any way being involved. "We also understood, of course, that in the light of the foregoing, I will not be held liable for anything connected with your business." When Moody received the petitioner's stock he hoped to be able to reorganize the business and interest new capital. In the latter part of December 1947 he tried without success to interest new capital in the business and decided that "was the end of it". He then told petitioner that the plant would not be opened or operated in the spring of 1948. The plant, which was closed and ceased operations in October 1947, never reopened. During the years 1945, 1946 and 1947, the petitioner made the following payments to or on behalf of the Moody *192 Brick & Tile Company: October 18, 1945
$ 500.00
October 22, 1945
9,000.00
November 29, 1945
500.00
February 2, 1946
600.00
March 18, 1946
500.00
May 10, 1946
98.21
May 14, 1946
700.00
June 17, 1946
300.00
October 29, 1946
500.00
November 1, 1946
98.21
November 22, 1946
100.00
December 5, 1946
200.00
January 30, 1947
625.00
March 11, 1947
1,000.00
April 5, 1947
500.00
April 19, 1947
300.00
May 2, 1947
500.00
May 20, 1947
850.00
October 1, 1947
500.00
October 27, 1947
100.00
November 6, 1947
50.00
Total
$17,521.42 All of the above-mentioned payments, with four exceptions, were made by checks payable to the order of Edward H. Moody and were endorsed by him. The checks dated October 22, 1945, for $9,000 and November 29, 1945, for $500 were made payable to the order of Lawrence Mickeljohn. Mickeljohn was assistant cashier of the bank which arranged for the closing of the transaction involving the purchase of the plant by the partnership. Moody had his account in this bank, and the two checks were deposited by Mickeljohn in Moody's account. $5,000 of the $9,000 check was paid by petitioner to purchase a one-half interest in the partnership. *193 The payments of $98.21 on May 10, 1946 and November 21, 1946, were for two fans which petitioner purchased for the corporation at an Army goods store. The petitioner received notes of the Moody Brick and Tile Company signed by E. H. Moody, president, for each of the payments above listed with the exception of $5,000 of the $9,000 payment made on October 22, 1945. In the notes executed prior to January 30, 1947, the company promised to make payment within six months, one year or two years after the date of the notes. The notes executed on January 30, 1947 and thereafter were payable on demand. None of the notes provided for the payment of any interest and no interest or principal payments were ever received by the petitioner. The notes were unsecured and negotiable. The only money contributed by Moody to the partnership or corporation was the amount paid by him to acquire his fifty per cent interest in the partnership. It was the intention of both Moody and the petitioner that $5,000 was to pay for petitioner's interest in the partnership; that payments over and above that amount made by petitioner to either the partnership or the successor corporation were to be loans; and that *194 these loans were to be paid when the business was able to make payment. The petitioner made no loans in 1945, 1946 or 1947 other than to the Moody Brick & Tile Company. The note given by the corporation on April 10, 1946, to evidence the loan of $20,000 from the Carlinville National Bank provided for payment in installments plus interest. The corporation paid $2,000 due on this note early in 1947, but did not pay three installments of $1,125 plus interest due prior to December 31, 1947. The bank obtained judgment on or about September 11, 1948, and suggested that it would accept transfer of the corporation's property in lieu of foreclosure. On October 3, 1949, the board of directors of the corporation agreed with the bank's suggestion, and on October 28, 1949, the corporation deeded its real and personal property to the bank. In the corporation income tax return filed by the Moody Brick & Tile Company, Inc. for its fiscal year ended March 1, 1947, it reported a net loss of $9,507.25, and in its return for its fiscal year ended February 28, 1948, it reported a net loss of $10,324.67. The balance sheets in schedule L of these returns show the following: March 1,
March 1,
March 1,
1946
1947
1948
Bonds, notes and mortgages payable: (a) With original maturity of less than 1 year
$700.00
$ 4,877.06
$ 3,606.23
(b) With original maturity of 1 year or more
none
18,000.00
18,000.00
*195 The corporation's capital stock liability was shown on these balance sheets to be $10,000. As of December 31, 1947, its liabilities, exclusive of capital stock, exceeded its assets, substantially all of which were pledged as security for the loan obtained from the Carlinville National Bank. The books of the corporation were destroyed by Edward H. Moody after an official in charge of the internal revenue office at Alton, Illinois, when asked by Moody whether he deemed it necessary to keep them longer, stated that in so far as his office was concerned there was no reason for keeping them. Petitioner's stock in the Moody Brick & Tile Company, Inc. became worthless during the year 1947. His basis for gain or loss on such stock as of December 31, 1947, was $3,945.05. The amounts totalling $12,521.42 advanced by petitioner during the years 1945, 1946 and 1947 represented loans, and the notes evidencing such loans became worthless during the year 1947. Petitioner was not engaged during 1947 in the trade or business of lending money to corporations or other business enterprises or of promoting or financing them, nor was he engaged in the brick and tile business, which was the business *196 of the Moody Brick & Tile Company, Inc. His loss on his loans to that corporation was not incurred in any trade or business in which he was engaged. Opinion RAUM, Judge: The petitioner and his wife in the joint income tax return filed by them for the year 1947 claimed a long-term capital loss of $2,500 because of a worthless stock loss, and a deduction limited to $1,000 by the provisions of Section 117(d)(2) of the Internal Revenue Code of 1939, and also claimed a deduction of $12,521.42 as a business bad debt. The respondent disallowed both of the claimed deductions. The respondent contends that all of the money advanced by petitioner to the Moody Brick & Tile Company, Inc. was a capital investment, and, in the alternative, that any debt which may be held to have been created by petitioner's advances constituted a non-business debt. Respondent also contends that neither the stock of the company nor any loans petitioner may have made became worthless in the year 1947. Petitioner contends that $5,000 of the $17,521.42 advanced by him to the company represented a capital investment; that the remainder constituted a business bad debt; and that both the capital investment and the *197 debt became worthless during the year 1947. The petitioner had the burden of proving what portion of the advances made by him represented loans. The brick and tile plant which he and Moody decided to purchase and operate in October 1945 was an old established business which had been operated by members of the Moody family for many years prior to 1943. The prospects for its successful operation appeared to be good as the building business was booming in 1945 and farmers needed tile for drainage. Petitioner and Moody were told by engineers and others that the money they contributed to the capital of the venture would be sufficient to operate the plant. Petitioner contributed $5,000 and Moody an equivalent amount. Additional funds required for the modernization of the plant and the development of a satisfactory drying system recommended by ceramic engineers were borrowed from a bank. However, the $20,000 the engineers estimated to be sufficient for these improvements proved to be inadequate. Whenever additional funds were needed to keep the business operating, the petitioner advanced them. Moody's contribution was limited to his capital investment. Both Moody and the petitioner testified *198 that it was their intention that petitioner's capital investment be $5,000, and that advances made in excess of this amount be loans. Petitioner received a note when each advance was made. The board of directors of the corporation at a special meeting held on March 29, 1946, approved the action of Moody in borrowing funds from petitioner and giving him notes as security, and authorized additional borrowing from petitioner for operating expenses when necessary. Petitioner expected the notes to be paid when the corporation was able to do so. The evidence convinces us that $5,000 of the advances made by petitioner represented his capital contribution, and that the remaining advances of $12,521.42 were loans, and we have made a finding to this effect. In reaching this conclusion, we have not been unmindful of the fact, stressed by the respondent, that some part or all of the advances of $12,521.42 were not recorded as notes payable in the balance sheets shown in the corporation's returns for its years ended February 28, 1947 and February 28, 1948. While the balance sheets are some indication that the advances might not have been loans, they are not conclusive and are not as persuasive *199 as other pertinent factors which clearly disclose that the intent was that advances made in excess of $5,000 were to be genuine loans. We have also found as a fact, in accordance with the petitioner's contention, that the stock of the Moody Brick & Tile Company, Inc., which he owned, and the debt of $12,521.42 owed by the corporation to him, became worthless during the year 1947. The identifiable events which fixed the worthlessness of both the stock and the debt, all of which occurred prior to December 31, 1947, were the failure of Moody's efforts in the latter part of December to secure capital necessary to continue the operation of the business, his decision that the plant which was closed in October 1947 should not be reopened, and the practical certainty that the insolvent corporation, substantially all of whose real and personal property was pledged as security for a bank loan, would not be able to pay its unsecured creditors or its stockholders. The worthlessness of both the stock and the indebtedness as of December 31, 1947, has been corroborated by subsequent events. On brief the respondent makes the contention that the basis of petitioner's stock is not the amount of *200 his original capital investment in the partnership. He points out that the partnership for its taxable year October 23, 1945 to February 28, 1946, reported a loss for Federal income taxes of $2,109.90, and that inasmuch as petitioner's share of this loss as a 50 per cent partner was $1,054.95, the basis for this capital interest in the partnership was reduced by $1,054.95. We agree with respondent. Anton Meyer, 3 B.T.A. 1329, 1333. This conclusion does not, however, affect the amount of the capital loss which is deductible as that is limited to $1,000 by Section 117(d)(2) of the Internal Revenue Code of 1939 since petitioner had no gains from the sale of capital assets during 1947. There remains the question whether the $12,521.42 advances constituted business or non-business loans. If the former the petitioner is entitled to the deduction of the entire amount as claimed, but if the latter he is not entitled to any deduction in addition to the $1,000 heretofore allowed because of the worthlessness of the stock. This results from the fact that Section 23(k)(4) of the Internal Revenue Code of 1939 provides that if a non-business debt becomes worthless within the taxable *201 year, the loss resulting therefrom shall be considered a loss from the sale or exchange during that year of a capital asset held for not more than six months, and under Section 117(d)(2) petitioner's loss from the sale or exchange of capital assets is allowable as a deduction only to the extent of $1,000. The petitioner contends that he was engaged in the brick and tile business and that the loans of $12,521.42 constituted loans in his trade or business. The evidence does not support this contention. The Moody Brick & Tile Company, Inc. was engaged in the brick and tile business during 1947. Petitioner was a stockholder, director, officer and creditor of that corporation. As an officer and director he participated to some extent in the affairs of the corporation. By reason of such participation the business of the corporation did not become his business and his loans to it merely created a non-business creditor-debtor relationship between him and the corporation. Cf. Dalton v. Bowers, 287 U.S. 404; Burnet v. Clark, 287 U.S. 410; Deputy v. duPont, 308 U.S. 488, 493-494; Charles G. Berwind, 20 T.C. 808, affirmed per curiam 211 Fed. (2d) 575 *202 (C.A. 3); Hadwen C. Fuller, 21 T.C. 407; Jan G. J. Boissevain, 17 T.C. 325; A. Kingsley Ferguson, 16 T.C. 1248; Estate of William P. Palmer, Jr., 17 T.C. 702. Moreover, he was not in the business of making loans or financing various enterprises. Cf. Commissioner v. Smith, 203 Fed. (2d) 310 (C.A. 2). According to his testimony, the only loans made by him during the years 1945, 1946 and 1947 were those made to the Moody Brick & Tile Company. He stated, however, that at some undisclosed times he invested about $600 in a corporation engaged in developing milkweed floss and about $2,000 in a venture engaged in developing a new method of indexing tariff rates. These activities, even when combined with the few abortive ventures in which several of his partners in the Consolidated Agency participated, were not sufficiently extensive in fact to constitute a trade or business. Our conclusion is that the loans by petitioner to the Moody Brick & Tile Company were not made in the course of any trade or business engaged in by him and that the loss sustained by him when they became worthless was a loss from a non-business bad debt. *203 Decision will be entered under Rule 50.