T.C. Memo. 2001-176

UNITED STATES TAX COURT

PINE CREEK FARMS, LTD., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16033-99.                    Filed July 17, 2001.

<u>Bob A. Goldman</u>, for petitioner.

<u>James E. Schacht</u> and <u>Christa A. Gruber</u>, for respondent.


MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioner's Federal income tax for the fiscal year
ending February 28, 1995, in the amount of $1,576 and a section
6662(a) penalty in the amount of $315.20.  Unless otherwise
indicated, section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This Court must decide: (1) Whether losses incurred by petitioner on the sale of hog futures are capital losses or ordinary losses, and (2) whether petitioner is liable for the accuracy-related penalty under section 6662(a).

This case was submitted fully stipulated pursuant to Rule 122. All of the facts stipulated are so found. Petitioner had its principal place of business in Lime Springs, Iowa, at the time the petition was filed.

Petitioner was incorporated in Iowa on March 1, 1993, and is engaged in the farming business. Petitioner raises corn, soy beans, and cattle. Petitioner uses its corn and soy bean crops either to feed its cattle, which it raises and markets, or to sell to two other corporations, Grow Pork, Inc. (Grow Pork) and Reis Ag Ltd. (Reis Ag).

Grow Pork is engaged in the hog farrowing business. Grow Pork breeds sows, raises the baby pigs until they weigh approximately 60 pounds, and then sells them to the entities controlled by the owners of Grow Pork, including Reis Ag. Reis Ag is engaged in the hog finishing business. Reis Ag obtains pigs when they weigh approximately 60 pounds, feeds and raises them, and then sells the hogs. Petitioner sells the grain to

Grow Pork and Reis Ag and the grain is fed to the pigs owned by the latter corporations.

All three of these corporations have a common shareholder, John Reis (Reis). Reis owns 51 percent of the stock of petitioner, and Kay Reis, his wife, owns the other 49 percent. Reis owns 50 percent of the stock of Reis Ag, and his brother owns the other 50 percent. Reis owns 20 percent of the stock of Grow Pork, and there are four other 20 percent shareholders. Each of the three corporations is a C corporation that maintains separate business operations with separate books, records, and bank accounts.

Prior to incorporating petitioner, Reis maintained a commodities account with Frontier Futures, Inc. (Frontier) which he used as a hedge account. When petitioner was incorporated, Reis' commodities account with Frontier was transferred to petitioner. Neither Reis Ag, Grow Pork, Reis, nor Kay Reis maintains any commodities accounts. Reis stated that it was simpler to have petitioner maintain a hedge account because he and his wife owned petitioner. He also stated that this made for more accurate and simpler maintenance of records for all purposes, including tax reporting, whereas utilizing a hedge account for the other corporations would have been very difficult because of the spread of ownership.

During the taxable year ended February 28, 1995, petitioner, through the Frontier commodity account, was involved in numerous futures transactions for corn, soybeans, cattle, and hogs. The net result of these transactions was a loss of $40,934.80. Petitioner deducted $40,798 for "hedging expense" as an ordinary loss on its return for the year ending February 28, 1995. The reason why approximately $137 of losses was not deducted by petitioner is unknown to the parties. Of the total amount of the losses, $6,441.52 of the losses was generated by transactions in hog futures. In the notice of deficiency, respondent disallowed $6,305 of petitioner's hedging expense deduction (i.e., $6,441.52 of hog future losses less the approximately $137 of losses petitioner did not deduct), on the ground that petitioner was not engaged in the production of hogs. Respondent determined that the $6,305 loss was a capital loss.

Respondent contends that because petitioner was not engaged in the hog business it could not have hedging transactions in that commodity and its losses incurred from transactions in hog futures are capital losses in nature, not ordinary losses. Petitioner contends that its method of involvement with hog operations is sufficient to allow the losses from the transactions to be deducted as hedging losses.

Section 165(a) generally allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(f) states that losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in section 1211 and 1212, which set forth limitations on capital losses. A "capital asset" is defined as "property held by the taxpayer", but there are several exceptions to the general rule. Sec. 1221. During the year in issue, none of the exceptions addressed futures contracts. Sec. 1221. (Section 1221 was amended by adding subsection 7 which excludes clearly identified hedging transactions from the definition of capital asset, effective for any transaction entered into on or after December 17, 1999. Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. 106-170, sec. 532(a)(3), 113 Stat. 1928). Because commodity futures contracts were not specifically excluded, they generally are treated as capital assets. See generally Arkansas Best Corp. v. Commissioner, 485 U.S. 212 (1988); Myers v. Commissioner, T.C. Memo. 1986-518.

Section 1233(a) specifically provides that gain or loss from short sales of commodity futures shall be treated as gain or loss from the sale of a capital asset. However, section 1233(g) states that section 1233(a) shall not apply in the case of a hedging transaction in commodity futures.

The regulations under section 1221 also contain a provision which governs the treatment of hedging transactions. Sec. 1.1221-2, Income Tax Regs. Under this provision, "the term capital asset does not include property that is part of a hedging transaction". Sec. 1.1221-2(a)(1), Income Tax Regs.

A hedging transaction is "a transaction that a taxpayer enters into in the normal course of the taxpayer's trade or business primarily * * * to reduce risk of price changes or currency fluctuations with respect to ordinary property * * * that is held or to be held by the taxpayer". Sec. 1.1221-2(b)(1), Income Tax Regs. Property is "ordinary property" only if a sale or exchange of the property by the taxpayer could not produce capital gain or loss regardless of the taxpayer's holding period when the sale or exchange occurs. Sec. 1.1221-2(c)(5)(i), Income Tax Regs. The regulations under section 1.1221-2 are intended to provide the only definition of a "hedging transaction". Sec. 1.1221-2(a)(3), Income Tax Regs.

Under the regulations, whether or not a transaction reduces the risk of price changes or currency fluctuations is determined "based on all of the facts and circumstances" surrounding the taxpayer's business and the transaction. Sec. 1.1221-2(c)(1)(i), Income Tax Regs. In applying this concept, we look to case law to determine whether a transaction reduces a taxpayer's risk.

Under case law, a bona fide hedge requires: (1) A risk of loss by unfavorable changes in the price of something expected to be used or marketed in the taxpayer's business; (2) a possibility of shifting the risk to someone else, through the purchase or sale of futures contracts; and (3) an intention and attempt to so shift the risk. FNMA v. Commissioner, 100 T.C. 541, 569 (1993). In every hedge there must be a direct relationship between the product that is the basis of the taxpayer's business and the commodity futures in which the taxpayer deals for protection. Cullin v. Commissioner, T.C. Memo. 1997-292. There must also be a close relationship between the price of the product and the price of the commodity future. United States v. Rogers, 286 F.2d 277, 282 (6th Cir. 1961); Hoover Co. v. Commissioner, 72 T.C. 206, 231 (1979); Cullin v. Commissioner, supra.

In this case, respondent disallowed the ordinary treatment of losses on hog futures. Petitioner did not produce hogs. In Myers v. Commissioner, supra, we stated that the taxpayer "had little, if any, reason to hedge" soybean and feeder cattle where the taxpayer did not produce soybeans or feeder cattle. We found that such transactions resulted in capital losses. Id. Petitioner argues that although it did not produce hogs, it did sell corn and soybeans to other corporations which produced hogs. Petitioner presented no evidence that it could not sell the

grains to different companies for other purposes.  Petitioner did not prove a direct relationship between the corn or soybeans which are the basis of its business and the hog futures in which it deals.  Moreover, what is also critical is that petitioner did not establish that there was a close relationship, or any relationship, between the price of corn or soybeans and the price of hog futures.  The transactions in hog futures did not reduce the risk of price changes or currency fluctuations with respect to petitioner's ordinary property.

Petitioner also contends that its major stockholder, Reis, maintains the hedging account to protect his hog and grain prices and that everything is held in one account to save expenses and time.  Respondent's position is that the business of the other corporations in which Reis is a shareholder may not be attributed to Reis, and then reattributed from him to petitioner.

It is well settled that a corporation is an entity distinct from its shareholders.  Dalton v. Bowers, 287 U.S. 404, 410 (1932).  A corporation's business is not attributable to its shareholders, absent exceptional circumstances.  Burnet v. Clark, 287 U.S. 410, 415 (1932).  While the regulations under section 1221 provide that the risk of one member of a "consolidated group" may be treated as the risk of the other members of the group, there is no evidence that petitioner, Reis Ag, and Grow

Pork were members of a consolidated group. Sec. 1.1221-2(d)(1), Income Tax Regs. They did not file, nor were they required to file, consolidated returns for the tax year. Secs. 1501 and 1502; secs. 1.1221-2(d)(3), 1.1502-1(h), Income Tax Regs. Therefore, the business transactions of Reis Ag and Grow Pork cannot be attributed to Reis and from Reis to petitioner. We find no exceptional circumstances which would cause us to ignore the corporate entities and attribute the production of hogs to petitioner. While it may have been easier for Reis to maintain all the hedging transactions in one account under petitioner's name, the hog futures transactions cannot be treated as hedging transactions of petitioner. The disallowed loss of $6,305 is a capital loss. Accordingly, we sustain respondent's determination.

Section 6662(a) provides for an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Section 6664(c)(1) provides that no penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and that the taxpayer acted in good faith. The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances. Sec. 1.6664-4(b)(1),

Income Tax Regs.  Reliance on the advice of an accountant may demonstrate reasonable cause and good faith.  <u>United States v. Boyle</u>, 469 U.S. 241, 250-151 (1985); sec. 1.6664-4(b)(1), Income Tax Regs.

In this case, the tax consequences regarding the futures transactions and the ownership of the various corporations were fairly complex.  Petitioner's tax returns were prepared by its accountant.  Petitioner relied upon the accountant's advice.  We find that petitioner had reasonable cause for the underpayment of tax and acted in good faith.  Accordingly, we hold for petitioner as to the section 6662(a) penalty.

<u>Decision will be entered for respondent as to the deficiency and for petitioner as to the penalty</u>.