*Decision will be entered under Rule 50.*

SHELDEN LAND COMPANY, A MICHIGAN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93196. Promulgated August 8, 1940.

*Ferris D. Stone, Esq.*, and *Edward S. Reid, Esq.*, for the petitioner. *Philip M. Clark, Esq.*, for the respondent.

500

OPINION.

LEECH: The first issue arises out of respondent's disallowance of a loss of $235,766.14 which petitioner claims as a result of the sale of land made by it to the Warren Corporation. Respondent's action is predicated on two propositions, first that the sale falls within section 24 (a) (6) of the Revenue Act of 1934, and, second, that the interfamily character and other circumstances of the transactions in connection with the sale contradict its bona fides and render the sale a nullity for tax purposes.

Section 24 (a) (6) disallows any deduction for "loss from sales or exchanges of property, directly or indirectly, (A) between members of a family, or (B) except in the case of distributions in liquidation, between an individual and a corporation in which such individual owns, directly or indirectly, more than 50 per centum in value of the outstanding stock. For the purpose of this paragraph—(C) an individual shall be considered as owning the stock owned, directly or indirectly, by his family; and (D) the family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants."

The net result of the sale here was that petitioner, the greater part of whose stock was held directly or beneficially by various relatives of the Shelden family, transferred certain property to the Warren Corporation, all of whose stock was held in trust for the benefit of the two children of Allan and Elizabeth Warren Shelden. Considering the factual situation against the provisions of the statute, we do not think the section can be applied.

Subsection (A) of the quoted statutory provision specifies sales. directly or indirectly, between members of a family. To hold that this was a sale between members of the same family would require not only the disregard of several trust entities, as well as two corporate entities, but also the specific language of subsection (D) of the same statute.

It is true that, in determining the number of $5,000 exclusions in connection with gifts to trusts, it has been held that such exclusions apply separately to each beneficiary rather than, as formerly, to the trust itself. *Wilton Rubinstein*, 41 B. T. A. 220. "But the very doubt which has affected the question as to trusts strengthens the conclusion that a gift to a corporation may not be treated as a group of gifts to its shareholders." *Frank B. Thompson*, 42 B. T. A. 121. Here the seller and purchaser are both bona fide corporations. And, no such circumstances are discernible as would warrant our disregard of the entities of these two corporations. *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415; *Burnet* v. *Clark*, 287 U. S. 410; *Dalton* v. *Bowers*, 287 U. S. 404. But, even if the separate entities of the several trusts and corporations here involved be ignored, the sale was not between "members of a family", as that term is defined in section 24 (a) (6) (D), *supra*. The individuals owning the stock of the buying corporation, under the provisions of section 24 (a) (6) (C), *supra*, were William Warren Shelden and Allan Shelden III. But, in the petitioner, the seller, these individuals owned, both actually and constructively, as described in subsection 24 (a) (6) (C), *supra*, only the stock held in the Allan Shelden III trust, the William Warren Shelden trust, the Allan Shelden trust and the Squire trust. The aggregate of the par value of all of this stock is $32,666.66, which is substantially less than the 50 percent ownership which section 24 (a) (6) (B), *supra*, requires. The majority stock of the seller, i. e., $63,333.34 in par value, is owned by their uncles, Alger and Henry Shelden, who are not "brothers and sisters, spouses, ancestors, or lineal descendants" of William Warren and Allan Shelden III.

The controlling statute does contain the ambiguous expression "directly or *indirectly*." (Emphasis supplied.) But there appears to be no legislative history resolving that uncertainty or, at least, none that can give respondent any encouragement here.[1] We, therefore, refuse to construe it as including the present situation. See *Frank B. Thompson, supra*.

Subsection (B) of section 24 (a) (6) singles out sales between an individual and a corporation in which the individual owns more than 50 percent in value of outstanding stock. This provision is clearly inapplicable here, since petitioner, the vendor, is a corporation.

Congress amended section 24 (a) (6), *supra*, in several respects in section 301 of the Revenue Act of 1937. That section, as thus amended, disallows losses, in addition to the instances already covered by section 24 (a) (6), in exchanges between corporations where more than 50 percent of the value of the outstanding stock in each of which is owned

---

[1] See Seidman, Legislative History of Federal Income Tax Laws, pp. 316, 317.

504

by or for the same individual, provided either one of such corporations is a personal holding company. The section, as amended, also provides that where a trust is involved, the beneficiaries shall be considered as owners of stock held by the trust, and where a corporation is involved, a person shall be considered as owning stock owned by members of his "family."

Assuming that the Warren Corporation is a personal holding company, section 301 of the 1937 Act would nevertheless not apply here, even if it were, as argued by respondent, a mere clarification of *existing* law. As already discussed, under the specific terms of the statute, the individuals owning the stock of the Warren Corporation, the purchaser, owned less than 50 percent of the stock of the taxpayer, the selling corporation. We therefore conclude that the deduction of the loss on the present transaction is disallowed by neither the 1934 nor the 1937 Revenue Act. Cf. *Higgins* v. *Smith*, 308 U. S. 473.

Petitioner needed the money, arising from the transaction, to meet pressing obligations. The fair market value of the land was subjected to an investigation, from which it was determined that $32,446.79 was the best price that could be obtained for the acreage. Petitioner proved by an expert witness, whose testimony was unchallenged, that the fair market value of the land sold was $200 per acre, or a total of $32,000. The consideration for the purchase was not furnished by the seller, petitioner, nor any of its stockholders. There was no agreement or option for reacquisition by the petitioner, nor was the property ever reconveyed to the petitioner. Consequently, we think, the second premise, upon which respondent denied any loss on this sale, is likewise without merit. *James Lee Johnson*, 37 B. T. A. 155; affd., 104 Fed. (2d) 140, and 308 U. S. 523; *Ralph Hochstetter*, 34 B. T. A. 791; *Marjory Taylor Hardwick*, 33 B. T. A. 249; *William H. Albers*, 33 B. T. A. 373; *Chicago Title & Trust Co., Executor*, 32 B. T. A. 249; *A. R. Glancy, Inc.*, 31 B. T. A. 236; *A. S. Eldridge*, 30 B. T. A. 1322; *Sydney M. Shoenberg*, 30 B. T. A. 659; affd., 77 Fed. (2d) 446; *Luella Hoyt Slayton*, 29 B. T. A. 931; *Oscar F. C. Kunau et al., Trustees*, 27 B. T. A. 509; *Commissioner* v. *Dyer*, 74 Fed. (2d) 685; *Commissioner* v. *Riggs*, 78 Fed. (2d) 1004.

Respondent contends that petitioner's loss on the sale to the Warren Corporation, if otherwise allowable, is allowable only to the extent of $2,000 under section 117 of the Revenue Act of 1934 because the property was a capital asset. This contention was made neither in the deficiency letter nor in the pleadings and is raised for the first time on brief. Respondent has thus made no determination that the property in question was a capital asset, and no presumption to that effect can properly be entertained. Indeed, since contiguous property had been developed, subdivided and sold, it is likely that petitioner was merely awaiting a favorable time to accord this tract of land the same

treatment and that this fact could easily have been shown had the issue been timely raised. In any event, we will not consider the question now, especially since petitioner, not having been apprised in advance of the hearing of respondent's reliance on this ground, would thereby be seriously prejudiced and robbed of an opportunity to offer proof on the point. *Ortiz Oil Co.*, 37 B. T. A. 656, and cases therein cited.

Accordingly, we hold that the loss suffered by petitioner upon the sale of its property to the Warren Corporation may be deducted in full. This conclusion is not affected by the fact that petitioner may have made the sale in order to reduce its tax liability on account of retirement of bonds at less than face value. Without now deciding whether petitioner realized income by reason of such retirement, it is well settled that a transaction is not vitiated because motivated by a desire to reduce taxes. *United States* v. *Isham*, 17 Wall. 496; *Jones* v. *Helvering*, 71 Fed. (2d) 214; *Gregory* v. *Helvering*, 293 U. S. 465.

Respondent disallowed petitioner's foreclosure loss on the sole ground that the loss occurred in the year of foreclosure rather than the year in which the equity of redemption expired. It is settled, however, that it is the expiration of the period of redemption which is the indentifiable event fixing such a loss. *Derby Realty Corporation*, 35 B. T. A. 335; *J. C. Hawkins*, 34 B. T. A. 918; affd., 91 Fed. (2d) 354. See also *Sherwin A. Hill, Administrator*, 40 B. T. A. 376. The case of *W. W. Hoffman*, 40 B. T. A. 459, upon which respondent relies, is distinguishable in that there an abandonment of worthless property occurred in the year of foreclosure. Here, far from abandoning the property, petitioner remained in possession and collected rents, issues, and profits during the period of redemption. We hold that petitioner is entitled to deduct a loss of $5,175 by reason of the foreclosures of its properties. In view of the stipulation of the parties that petitioner is not entitled to a loss of $700 in respect of certain other property which was foreclosed,

Reviewed by the Board.

*Decision will be entered under Rule 50.*