## JAMES C. and HELEN K. METZKER v. DEPARTMENT OF REVENUE

John B. Fenner, Corvallis, represented plaintiffs.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered March 2, 1971.

LOREN D. HICKS, Judge pro tempore.

Plaintiffs Mr. and Mrs. Metzker have appealed to this court for relief from an order of the defendant which held that their 1967 payment of a corporate obligation was a nonbusiness bad debt (deductible only as a short-term capital loss) rather than a business bad debt (fully deductible against ordinary income).

Mr. Metzker's principal business is the operation of a life insurance agency. In furtherance of that business several years ago he arranged for the Citizens Bank of Corvallis to finance premiums on insurance policies sold by his agency. All such loans to insureds for premiums are personally guaranteed by Mr. Metzker. This arrangement has been a major factor in the success of the business and has resulted in several hundred loans with a fluctuating total balance well in excess of one hundred thousand dollars.

In 1965, Mr. Metzker participated in the formation of Lease Sales, Inc., which was created to operate an automobile leasing franchise. He invested several thousand dollars in the stock of the company, made direct loans to it and guaranteed its loans from the Citizens Bank of Corvallis. Mr. Metzker actively participated in the business as a part time corporate director, officer and financial advisor. He received no salary, but hoped for remuneration in the future.

Unfortunately, Lease Sales, Inc., sank into serious financial difficulties causing it to default on its loan payments, whereupon the bank made demand upon the guarantee. Mr. Metzker promptly paid the debt because of the need to protect his good credit standing at the Corvallis bank, the only bank willing to carry the insurance premium loans on his guarantee. The debt was worthless and Mr. and Mrs. Metzker claimed it on their 1967 tax return as a business bad

debt. They claimed the loss from Mr. Metzker's personal loans to Lease Sales as a nonbusiness bad debt.

Plaintiffs claim the loss is a business bad debt on three bases: one, that Mr. Metzker guaranteed the loan in order to protect his business as an officer and employee of Lease Sales, Inc.; second, that Mr. Metzker is not an ordinary guarantor, but rather is in the business of guaranteeing loans; and, third, that Mr. Metzker paid the bank's demand in order to protect his good credit standing in connection with his insurance business.

In 1967 a business bad debt for income tax purposes was defined in ORS 316.330 (3):

> "For the purposes of this section, a 'business debt' means a debt created or acquired in connection with the taxpayer's trade or business, or a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

This definition is almost identical to 26 USC § 166(d)(2) (IRC 1954).[①] Therefore, especially since no applicable Oregon cases have come to light, the interpretation given the corresponding federal provision by the federal courts is pertinent. *Santiam Fish & Game Assoc. v. Tax Com.*, 229 Or 506, 368 P2d 401 (1962).

In *Trent v. Commissioner*, 291 F2d 669 (2d Cir 1961), 61-2 USTC ¶ 9506, the taxpayer proved that

---

[①] § 166 (d)(2), IRC 1954:

"(2) Nonbusiness Debt Defined.—For purposes of paragraph (1), the term 'nonbusiness debt' means a debt other than—

"(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

"(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

employment as a full-time paid executive of two small corporations was his trade or business and that as a mandatory condition of such employment he advanced personal funds to the corporations. Therefore, the court held that when the corporations failed the taxpayer had a business bad debt. Although *Trent* involved direct loans rather than guarantees of loans, there is no economic difference between the two and the principles and rules of law regarding the question of whether they are business or nonbusiness debts and the tax consequences are the same. *Putnam v. Commissioner*, 352 US 82, 77 S Ct 175, 1 L Ed2d 144 (1956), 57-1 USTC ¶ 9200.

In *Weddle v. Commissioner*, 325 F2d 849 (2d Cir 1963), 64-1 USTC ¶ 9112, the taxpayer owned the controlling interest in a family corporation to which she devoted almost full time as president and general manager. In order to obtain a line of credit for the company she agreed to guarantee all of its bank loans. The corporation failed and the taxpayer was forced to pay off a substantial corporate indebtedness. The court found that the taxpayer was engaged in the business of being the president and general manager of the corporation, but that she had failed to show that protection of her employment had been a significant motivation for the guarantees. Consequently, the debt was concluded to be nonbusiness.

The court pointed to Treas Reg § 1.166-5(b) (1960) which provided that a loss is a business bad debt only if "the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer" is "proximate." Borrowing from the law of torts as to the meaning of "proximate," the majority opinion held that if the creation of the debt

was "significantly motivated" by the taxpayer's business it would have a proximate relationship to the business and be a business debt, even though there was a nonqualifying, secondary motivation as well.

Judge Lumbard wrote a concurring opinion in which he objected to reliance on tort law and the test of whether protection of the taxpayer's employment was a significant although secondary motivation. Judge Lumbard felt that almost invariable preservation of employment would be a significant factor. He stated:

> "* * * such an expansive definition—which would bring within the ambit of § 166 any loan which is 'significantly' motivated by a desire to preserve the taxpayer's salary interest—is manifestly inconsistent with the long course of decisions in which that section and its predecessors have been considered. These decisions have taught that the courts must take great care to 'distinguish bad debts losses arising from [the taxpayer's] own business and those actually arising from activities peculiar to an investor concerned with, and participating in, the conduct of the corporate business.' *Whipple v. Commissioner* [63-1 USTC ¶ 9466], 373 U.S. 193, 202 (1963). In attempting to draw this distinction, as the Tax Court wisely noted in considering Mrs. Weddle's claim, we have no 'scales sufficiently sensitive to be able to ascertain the exact percentage of motivations which impelled [her actions],' and therefore 'we look to the main and dominant reason for [her actions].'" (*Weddle v. Commissioner*, 325 F2d 849 (2nd Cir 1963), 64-1 USTC ¶ 9112, at p 91, 147.)

In 1970 the Fifth Circuit Court of Appeals in *U.S. v. Generes*, 427 F2d 279, 25 AFTR2d 70-371, 70-1 USTC ¶ 9423, adopted "significant motivation" over "dominant motivation" as the test of whether the debt

was sufficiently connected to the taxpayer's business to be classified as a business debt. The taxpayer worked part time as salaried president of a family corporation which was engaged in heavy construction work. His duties with the company were to obtain financing and to personally guarantee its performance bonds. The company defaulted on two jobs and the taxpayer was forced to pay the bonding company. He claimed the loss as a business bad debt. There was agreement by the parties that being president of the family corporation with a $12,000 a year salary was a part-time business of the taxpayer which he wished to preserve, even though his principal business was serving as president of a savings and loan association. The only question then was the correct test to be applied to determine whether there was sufficient motivation to connect the debt to the part-time business. The majority held that a debt which is "significantly motivated" by the taxpayer's business is a debt created in connection with his trade or business and therefore is a business debt, even though the "dominant motivation" was not business oriented. Also see *Stratmore* v. *U.S.*, 420 F2d 461 (3d Cir 1970), 25 AFTR2d 70-371, 70-1 USTC ¶ 9157.

On the other hand, the Seventh Circuit, in 1969, in *Niblock v. Commissioner*, 417 F2d 1185, 24 AFTR2d 69-5792, 69-2 USTC ¶ 9704, adopted the "dominant" test when it held the taxpayer to the burden of proving:

> "* * * that his corporate employment furnished the dominant and primary motivation for making the advances and the guarantees. We disagree with the significant motivating factor test that was applied by the majority in *Weddle v.*

> *Commissioner of Internal Revenue* [64-1 USTC ¶ 9112], 325 F.2d 849, 851 (2 Cir., 1963). We believe that the only test that will inject sufficient certainty into the interpretation of Section 166, *supra,* is the dominant and primary motivation test that we have stated. We interpret thus the admonition of the Supreme Court in *Whipple v. Commissioner,* [373 US 193, 83 S Ct 1168, 10 L Ed2d 288, 11 AFTR2d 1454 (1963)] page 202: 'Even if the taxpayer demonstrates an independent trade or business of his own, care must be taken to distinguish bad debt losses arising from his own business and those actually arising from activities peculiar to an investor concerned with, and participating in the conduct of the corporate business.' " (69-2 USTC ¶ 9704, at p 85, 942.)

The U.S. Tax Court also applied the primary motivation test in *Rosati v. Commissioner,* 29 CCH Tax Ct Mem 1662 (1970), wherein it held that a majority stockholder whose primary motive in guaranteeing payment of corporate debts was to protect his business of being a salaried executive of the corporation incurred a business bad debt when the corporation failed.

■ Although these cases are in disagreement on the measurement to be applied, they agree that for a taxpayer to prove a business bad debt in connection with his activity as a corporate officer, he must show facts from which it can be found that employment as a corporate executive constituted his trade or business and that the loss was proximately related to such trade or business. See also *Kelly v. Patterson,* 331 F2d 753 (5th Cir 1964), 13 AFTR2d 1418, 64-1 USTC ¶ 9482.

In the instant case the court finds that plaintiffs did not prove that Mr. Metzker had a trade or business of being an employed officer of Lease Sales, Inc., or

that protection of his employment with the corporation was a dominant, or even a significant motivation, for his guaranteeing the loan. The evidence showed Mr. Metzker's interest as an employee of the corporation was minimal. His status was that of a stockholder, director and officer of a corporation which he had helped form completely apart from his principal business. He received no salary and none was promised. There was no proof that his guarantee was necessary to keep his position or that it was in any way related to his role as a part-time director, officer and advisor of the company. His interest in the corporation was not that of an employee, but rather of an investor. His motivation in guaranteeing the loans was to protect his investment by providing the necessary financing to establish and perpetuate the business of the corporation with the hope it would be a profitable venture. At the time of filing their 1967 tax return the plaintiffs apparently did not consider protection of employment as a basis for contending that the loss in question was a business bad debt, because that contention would also have been a sound basis for taking the loss on Mr. Metzker's direct loans to the company as a business bad debt, which they did not do. Plaintiffs cannot prevail on their contention that the guarantee resulted in a business debt because its purpose was to protect Mr. Metzker's status as an officer and employee of Lease Sales, Inc.

Plaintiffs also argue that Mr. Metzker was a conglomerate of businesses, one of which was making a profit by guaranteeing loans, and that the loss suffered from the guarantee for Lease Sales, Inc., was connected to such business. A discussion on the question of what constitutes a business debt is contained in 34

Am Jur2d, *Federal Taxation* ¶ 6476 (1971), where the author states:

> "A debt is a business debt if the taxpayer is in the business of lending. Whether he is in that business depends largely on the number and frequency of the loans. Occasional loans don't make a business. * * *
>
> "* * * * *
>
> "There's no business debt status unless taxpayer can prove he has a business. Investing isn't a business."

In *Whipple v. Commissioner*, 373 US 193, 83 S Ct 1168, 10 L Ed2d 288 (1963), 63-1 USTC ¶ 9466, 11 AFTR2d 1454, the U.S. Supreme Court noted that the design of the tax code was to make

> "* * * full deductibility of a bad debt turn upon its proximate connection with activities which the tax laws recognized as a trade or business, a concept which falls far short of reaching every income or profit making activity.
>
> "* * * * *
>
> "Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged. Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive to the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer himself. When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of the corporation. Even if the taxpayer demonstrates an independent trade

or business of his own, care must be taken to distinguish bad debts losses arising from his own business and those actually arising from activities peculiar to an investor concerned with, and participating in, the conduct of the corporate business. "* * * [The taxpayers' case here] inexorably rests upon the claim that one who actively engages in serving his own corporations for the purpose of creating future income through those enterprises is in a trade or business. That argument is untenable in light of *Burnet, Dalton, DuPont* and *Higgins,*[2] and we reject it. * * *" (373 US at pp 201-203.)

■ Of course, a person may have more than one trade or business, and the loaning of money and the guaranteeing of loans can be a business. Likewise, the promoting of corporations for profit can be a business. The court finds, however, that neither Mr. Metzker's activities in guaranteeing loans nor his activities in promoting Lease Sales, Inc., can be characterized as a separate trade or business. He was not in the business of guaranteeing loans or of creating, financing and selling corporations or of managing a conglomerate of businesses. His investments were not numerous enough or of a kind to amount to a trade or business in themselves. For a discussion of elements required for finding a taxpayer to be engaged in the trade or business of making loans or of investing in, managing or promoting corporations, see 5 Mertens, *Law of Federal Income Taxation*, § 30.25. Also *U.S. v. Byck*, 325 F2d 551 (5th Cir 1963),

[2] *Burnet v. Clark*, 287 US 410, 53 S Ct 207, 77 L Ed 397 (1932), 3 USTC ¶ 1010; *Dalton v. Bowers*, 287 US 404, 53 S Ct 205, 77 L Ed 389 (1932), 3 USTC ¶ 1008; *Deputy v. DuPont*, 308 US 488, 60 S Ct 363, 84 L Ed 416 (1940), 40-1 USTC ¶ 9161; *Higgins v. Commissioner*, 312 US 212, 61 S Ct 475, 85 L Ed 783 (1941), 41-1 USTC ¶ 9233.

13 AFTR 2d 303, 64-1 USTC ¶ 9137. Plaintiffs cannot prevail on their theory that Mr. Metzker was a conglomerate of businesses or that he was in the business of guaranteeing loans.

The third basis for plaintiffs' claim that the loss suffered on the guarantee was a business bad debt is the proposition that payment on the guarantee was connected to Mr. Metzker's insurance business because the payment was required by the bank to preserve his arrangement for loans to policyholders. This was the basis for originally reporting the loss as a business bad debt, and the primary contention of the plaintiffs at the hearing before the Department of Revenue and at trial before this court.

■ The argument, however, suffers from a false premise that *payment* of the debt is a test of whether or not the debt is connected with the taxpayer's trade or business. Rather, the test is whether the debt is created or acquired in connection with the taxpayer's trade or business, or whether the worthlessness of the debt is incurred in the taxpayer's trade or business. *Campbell v. Walker,* 208 F2d 457 (5th Cir 1953), 44 AFTR 841, 54-1 USTC ¶ 9117; *Pokress et al v. Commissioner,* 234 F2d 146 (5th Cir 1956), 49 AFTR 1424, 56-2 USTC ¶ 9610; ORS 316.330 (3), *supra.* Here, creation of the guarantee and acquisition of the debt were in no way connected with Mr. Metzker's trade or business which was insurance. Likewise, the loss from the worthlessness of the debt was not incurred in his business. Mr. Metzker created the guarantee to benefit Lease Sales, Inc. He acquired the debt because Lease Sales was unable to pay. The debt became worthless and a loss because Lease Sales failed. None of these circumstances had anything to do with the insurance business. The fact that Mr. Metzker was willing to

promptly pay his legal obligation in order to protect his insurance business is a separate matter.

A recent case from the U.S. Tax Court, *Smith v. Commissioner*, 55 TC —, No. 26 [1970 Transfer Binder] CCH Tax Ct Rep Dec 30, 408 (November 3, 1970), comes closer to supporting plaintiffs' position than any other that has come to this court's attention. In that case the taxpayer, Mr. Smith, was engaged as a sole proprietor in the road construction business. In 1960 he invested in the business of oil well servicing by forming Smith Petroleum, Inc. He supplied the financing and served without compensation as president and general manager of the corporation. Smith Petroleum lost money, and was unable to meet the payments due on its notes payable. To keep the company alive, over a period of years commencing in 1963 Mr. Smith advanced more than $90,000 to Smith Petroleum. In 1966, however, the company was liquidated with all of its assets being applied on its accumulated indebtedness of over $200,000. There were no funds with which to repay Mr. Smith for any of his cash advances.

The taxpayer's evidence proved that he loaned the money to the faltering Smith Petroleum, Inc., in part because failure of the company would seriously impair his ability to obtain vitally necessary bid and performance bonds for his substantial public road construction business. The Tax Court viewed the question of whether the advances constituted business or nonbusiness bad debts as essentially one of fact to be determined by whether the debt was proximately related to the taxpayer's trade or business. The court stated:

"* * * the taxpayer must first show that there

was a relationship between the loans and resulting losses and a trade or business engaged in by the taxpayer. If such a relationship is shown then motivation becomes relevant in determining whether the debt was in fact incurred in connection with, or was proximately related to, taxpayer's trade or business." (*Smith, supra,* at p 3474.)

The court found that the loans were created in connection with Mr. Smith's road construction business because to continue in that business he had to maintain a good credit rating which he would have lost if Smith Petroleum had not paid its debts. The court also found that the loans were made in part to protect Mr. Smith's investment in Smith Petroleum. Therefore, the court turned to the question of motivation and discussed the conflict in the federal circuits as to whether proof was required that loans were "dominantly motivated" by the taxpayer's trade or business. Because the Fifth Circuit, wherein an appeal of the case would lie, had just adopted the "significant motivation" test in *U.S. v. Generes, supra,* the court felt compelled to apply that measurement to Mr. Smith. It found that his construction business was a significant motivation for the loans and that his loss was therefore a business bad debt. The court then went on, however, to express the opinion that the Seventh Circuit had been correct when it stated "that the only test that will inject sufficient certainty into the interpretation of Section 166 * * * is the dominant and primary motivation test * * *."[9]

*Smith* is the only case to come to this court's attention that holds a debt can be classified as a business debt because it was incurred to preserve the taxpayer's credit rating. The finding was based on the taxpayer's

[9] *Niblock v. Commissioner, supra.*

proof that a good credit rating was absolutely essential to his principal business and that the debt was incurred for the purpose of preserving that good rating. Although factually similar in many respects, *Smith* must be distinguished from the case at hand. The debt there was incurred in the first place to preserve the taxpayer's credit and business; here, the debt was originally incurred for a purpose unrelated to the taxpayer's credit or business. Only Mr. Metzker's decision to pay the debt without trying "to stall or work a deal" was connected to his insurance business. He suffered a loss because he guaranteed a debt that became worthless, not because he paid it. To permit the reason a taxpayer decides to pay his debts to be a determining factor in the classification of those debts as business or nonbusiness would be an extension of the holding in *Smith* that is unwarranted, especially since that case is a recent decision, standing alone, based on the unique facts present there.

■ The controlling statute, ORS 316.330 (3), defines a "business debt" as one "created or acquired in the taxpayer's trade or business," which this debt was not; or as one "the worthlessness of which is incurred in the taxpayer's trade or business" which this debt was not. The loss suffered by Mr. Metzker was that of an investor in a corporation and it resulted from a transaction made for the benefit of the corporation and its stockholders. It was a nonbusiness bad debt.

The defendant's order is affirmed.