Myron Edwin Cherry v. Commissioner.
Cherry v. Commissioner
Docket No. 2180-65.
United States Tax Court
T.C. Memo 1967-123; 1967 Tax Ct. Memo LEXIS 137; 26 T.C.M. (CCH) 557; T.C.M. (RIA) 67123; June 2, 1967
*137 Held, petitioner's experimental activities at home did not constitute a trade or business during the years involved and expenses incurred in connection therewith are not deductible under secs. 162(a), 212(1), or 165(a) and (c)(1) and (2), I.R.C. 1954. Amount of casualty loss deductible under sec. 165(c)(3), resulting from a fire in 1962, determined. James R. Jenks, for the petitioner. *139 John E. White, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioner's income tax for the year 1961 in the amount of $601.58 and for the year 1962 in the amount of $943.45. There are two issues for decision: (1) Whether petitioner's experimental activities conducted at home constituted a trade or business, or transactions entered into for profit, or were activities engaged in for the production or collection of income so that certain expenses and losses incurred in connection therewith are deductible by petitioner under sections 162(a), 165(c)(1) and (2), or 212(1), I.R.C.; and (2) the amount of a personal casualty loss sustained by petitioner as the result of a fire in 1962. Findings of Fact The stipulated facts are found as stipulated. Petitioner is an individual residing in Erie, Pa. During 1961 and 1962 petitioner resided in Westfield, N.J., and filed income tax returns for each of those years with the district director of internal revenue, Newark, N.J.
Petitioner attended Pennsylvania State University from 1954 until June 1957, when he received a degree *140 as a bachelor of science, mechanical engineering. Prior to his graduation from college, petitioner had been employed on two occasions by the General Electric Co. as a test engineer in Erie, Pa. In the course of his duties with General Electric, petitioner was concerned primarily with developing and evaluating inventive proposals designed to achieve cost reductions. From June 1957 until sometime after 1962, petitioner was employed by Bell Telephone Laboratories, Inc. (hereinafter referred to as Bell Laboratories). Petitioner was employed by Bell Laboratories as an engineer to investigate and invent new devices in the communications field. As a condition of his employment by Bell Laboratories, petitioner was required to sign an agreement containing the following provisions: I hereby assign and agree to assign to said Corporation, its successors and assigns, all my rights to inventions which, during the period of my employment by said Corporation or by its predecessor or successors in business, I have made or conceived or may hereafter make or conceive, either solely or jointly with others, in the course of such employment or with the use of said Corporation's time, material or facilities, *141 or relating to any subject matter with which my work for said Corporation is or may be concerned; * * * In connection with his employment with Bell Laboratories, petitioner undertook graduate studies at New York University and obtained a master's degree in engineering. Since prior to the time he entered college in 1954, petitioner has had an almost compulsive interest in developing new products and in discovering how existing products can be made cheaper and better. Petitioner did not attempt any projects of this type while he was in college because of a lack of education and equipment. At various times during the years 1958 through 1962, however, petitioner experimented at home with the following projects: 1. A snow removal mechanism 2. A racetrack timing device 3. A telephone key system 4. A "hand-in-the-box" novelty device 5. A transistorized automotive ignition system 6. A loran receiving device 7. A magnetometer Petitioner was not required by Bell Laboratories to do any work at home. Prior to 1960 petitioner had lived in an apartment which he shared with another man. Sometime in 1960 petitioner moved into a rented two-bedroom house which had a basement. Petitioner's *142 expenses for rent and utilities were greater after he moved into the house than they had been when he lived in the apartment. While he lived in the apartment, petitioner had a limited amount of space and equipment to use in working on his experimental projects. Petitioner intended to use the basement of the house as a workshop and to acquire additional equipment. On January 1, 1961, petitioner owned equipment, including items purchased prior to the time he moved into the house, which had cost at least $1,416.56. Petitioner purchased both new and used equipment. Some of the equipment had been bought in kit form and assembled by petitioner. Sometime prior to 1961 petitioner had a patent search made with respect to the racetrack timing device. During 1959 and 1960, petitioner paid $100 for a patent search and $25 for drawings related to the snow removal mechanism. No other patent searches were made with respect to petitioner's projects. The attorney who conducted the search on the snow removal device promised petitioner that he would apply for a patent, but to petitioner's knowledge he did not do so. Petitioner has never filed an application for a patent on any of the projects on *143 which he worked at home. Petitioner's only attempt to sell one of his devices consisted of placing advertisements in two magazines in 1960. These advertisements were intended to promote the sale of petitioner's racetrack timer. Four inquiries were received as a result of the advertisements, but petitioner considered none of the inquiries to be promising. Petitioner never sold a racetrack timer and he abandoned his attempts to sell the device prior to 1961. Petitioner's only contact with a potential developer of one of his projects concerned the hand-in-the-box device. This device was a novelty item which was already on the market and thus unpatentable. Petitioner thought he could sell the item for $5 or less, which was substantially less than the price of the device which was then available. This project was abandoned when someone else began selling the device for approximately $5 because petitioner felt his time would be better spent on other projects. Petitioner did not have a patent search conducted for the transitorized automotive ignition system, because he did not develop a system which he considered commercially competitive with available systems. With respect to the *144 loran receiving device and magnetometer, petitioner conducted what he termed a "commercial search," which consisted of obtaining information regarding the prices and features of products which were already available. The results of petitioner's commercial searches regarding these two projects led him to believe that he could develop devices which could be sold for prices comparable to those of the lower-priced models which were then available and which would offer, in addition, some of the advantages of the higher-priced ones. Petitioner continued his work on both of these projects to some extent after 1962. For 6 to 8 months during 1961 and 1962, petitioner spent most of his time after work and on weekends trying to develop the telephone key system. The equipment used in connection with this project consisted of an oscilloscope, a vacuum tube volt meter, and certain handtools. Petitioner knew that he would not realize a direct economic gain from this project, because it was within the scope of his agreement assigning his rights to inventions in the communications field to Bell Laboratories. Petitioner had observed, though, that other employees who developed good ideas received promotions *145 entailing increased compensation and improved working conditions, and he anticipated that success with the telephone key system would result in a similar enhancement of his position. Petitioner's work on this project was not required by the terms of his employment with Bell Laboratories. Petitioner had developed a working model of the telephone key system by Easter Day 1962. While petitioner was visiting with his parents in Erie, Pa., on that Easter Day, there was a fire in his house in Westfield which destroyed his working model, as well as the related notes and drawings. Having just worked very hard on the system, petitioner was quite discouraged by the fire and ceased working on the project. The telephone key system was never presented to Bell Laboratories. Petitioner has done no further work on the system since the fire. After the fire, petitioner moved into another house and repaired or replaced certain pieces of his equipment. Petitioner performed no work on his projects during the remainder of 1962. Petitioner spent little time on his projects subsequent to the fire for a variety of reasons. One summer he spent a considerable amount of time with a girlfriend. In 1963 he *146 returned to Pennsylvania State University and his expermental activities were stopped by an unusually heavy workload at the school. About 1 1/2 years prior to the trial, his experimental activities were slowed substantially by an accident. Petitioner thought that each of his projects had commercial possibilities. With the exception of the racetrack timer, petitioner continued to believe that all of his projects had good prospects for commercial success at the time of the trial. Petitioner never advertised himself as an inventor. Petitioner never realized any income from any of his experimental projects. Petitioner did not claim any deductions with respect to his experimental activities on any of his income tax returns for years prior to 1961. On his income tax returns for 1961 and 1962 petitioner claimed deductions for rent incurred in connection with his "machine shop" business in the amounts of $840 and $680, respectively. He also claimed as business deductions on those returns the amounts of $539.62 and $142, respectively, for depreciation on various items of machinery and equipment used in his experimental activities. On his 1962 return he also claimed a deduction of $168 *147 as a loss on business property destroyed in the fire. The deductions claimed for rent were based on an allocation of the rent he paid for the house where he lived between the part used for his experimental activities and the part used for personal living purposes. In his notice of deficiency respondent disallowed all the business losses claimed by petitioner. Petitioner carried no fire insurance on the contents of the house which were damaged or destroyed by the fire on Easter Day 1962. In his income tax return for 1962, petitioner claimed a personal casualty loss due to the Easter Day fire in the amount of $2,725. The list of items which were damaged or destroyed included various home furnishings; clothing; approximately 100 books; two radios; a high-fidelity amplifier; a stereophonic high-fidelity phonograph system; ski equipment and two pairs of skis; four musical instruments and three cases; a typewriter; a fire extinguisher; a brief case; tools; and a gasoline engine. Three pieces of equipment used in connection with the experimental projects were claimed as a loss on business property. Some of the items which were salvageable were repaired. Petitioner did much of the repair *148 work himself, and did not keep a record of the cost of replacement parts. He did have several of the items repaired, and offered the repair bills in evidence at the trial. An estimate of $110 for repariing one of the musical instruments and replacing its case was obtained the day of trial. The amount of loss claimed for all four instruments and the three cases was $75. Petitioner did not obtain estimates of the cost of repairing the other damaged items. The amount of the fire losses claimed by petitioner was based on his estimate of the value of each of the individual items prior to the fire arrived at by using the cost of the items he had owned for a year or less and by using cost less estimated depreciation for the items he had owned for longer than 1 year. He claimed 100 percent of the values so arrived at for the items he did not consider were salvageable, and 50 percent of the values of the items which were usable. Petitioner did not obtain an appraisal of the fair market value of the items destroyed or damaged by the fire immediately after the fire. In his notice of deficiency respondent allowed $1,054.50 of the $2,725 claimed by petitioner as a personal casualty loss on *149 his return for 1962. Respondent also allowed as an additional personal casualty loss for 1962 $60 of the $168 claimed by petitioner as a loss on business property damaged by the fire. Ultimate Findings of Fact Petitioner's experimental activities at home did not constitute a trade or business during the years 1961 and 1962. The rent and depreciation claimed as business deductions by petitioner on his 1961 and 1962 returns were not ordinary and necessary expenses incurred by petitioner for the production or collection of income. Petitioner sustained fire losses of property not connected with a trade or business in the year 1962, not compensated for by insurance or otherwise, in the amount of $1,635.50. Opinion The first issue is whether petitioner is entitled to deduct a prorata part of the rent he paid for the house in which he lived and in which he conducted his experimental activities, and depreciation on certain machinery and equipment he used in connection with those activities, as either ordinary and necessary business expenses under section 162(a), as ordinary and necessary expenses incurred for the production or collection of income under section 212(1), or as losses *150 incurred in a trade or business, as losses incurred in a trade or business, or in a transaction entered into for profit, under section 165(c)(1) and (2), all of the Internal Revenue Code of 1954. [1]
*151 Petitioner claims that the above expenses were incurred in connection with his business of inventing. Respondent argues on brief that petitioner's experimental activities did not constitute a trade or business but were a hobby, and that even if petitioner intended eventually to make a business of inventing during the years here involved the expenditures in question were made preparatory to entering a trade or business and are not deductible under the rationale of such cases as McDonald v. Commissioner, 323 U.S. 57, Industrial Research Products, Inc., 40 T.C. 578, John F. Koons, 35 T.C. 1092, and Eugene H. Walet, Jr., 31 T.C. 461. The issue is one of fact on which the petitioner has the burden of proof. On the evidence before us, we cannot find that petitioner is entitled to the claimed deductions for rent and depreciation under any of the sections of the Code mentioned above. [2]
*152 To be deductible under section 162(a) the expenses must have been incurred in carrying on a trade or business. "business was defined in Flint v. Stone Tracy Co., 220 U.S. 107, as "that which occupies the time, attention, and labor of men for the purposes of a livelihood or profit." In Deputy v. du Pont, 308 U.S. 488, the Court held that a "trade or business * * * involves holding one's self out to others as engaged in the selling of goods or services." But "Under any definition a business means a course of activities engaged in for profit." Industrial Research Products, Inc., supra.There must be both activities engaged in as a business and a profit motive. International Trading Co. v. Commissioner, 275 F. 2d 578. That the activities were engaged in as a business may be evidenced by taxpayer's devotion of a substantial portion of his time to the activities, James E. Austin, 35 T.C. 221, affd, 298 F.2d 583; extensive or repeated activity over a substantial period of time, Kerns Wright, 31 T.C. 1264, affd. 274 F. 2d 883; taxpayer's holding himself out to the public as being engaged *153 in that activity, Deputy v. du Pont, supra; and a business-like conduct of all the activities related to the production of a profit. To qualify as a trade or business the activities must also be engaged in with the intent to make a profit. The activities need not actually produce a profit in the year involved; nor is it crucial that the expectation of profit be a reasonable one. Margit Sigray Bessenyey, 45 T.C. 261, on appeal (C.A. 2, June 10, 1966). But taxpayer must prove that he had a bona fide expectation of profit. While petitioner's stated intent is to be taken into consideration in determining this subjective question, his overt actions and efforts to make the activities profitable are often more convincing to the trier of the facts. In our opinion petitioner's experimental activities were more indicative of a hobby than of a business. Prior to 1961 petitioner had never claimed a deduction for his costs incurred with respect to these activities, although the evidence indicates that he had had patent searches made with respect to the racetrack timer and the snow removal machine before 1961. In fact these were the only two patent searches he testified *154 to. Although petitioner testified that he had paid attorneys to make these searches, he also testified that he did not know what results were obtained from one of the investigations. There is no evidence that petitioner has ever filed an actual patent application. Petitioner has never advertised or held himself out to the public as being in the business of inventing. He has made no effort to either manufacture, market, or sell any of the devices he worked on, except possibly one of them, and that was prior to 1961 and he did not follow up on it. He testified that he still believes most of his inventions have commercial possibilities, but he has made no effort to make these possibilities become real. It would appear that as soon as a similar device appeared on the market, petitioner lost interest in the idea. Nor has petitioner realized any income from any of his inventions. There is some doubt about how much time petitioner devoted to his home experimental work during the years here involved. He testified that for 6 to 8 months before the fire he had devoted most of his spare time to development of his telephone key system; but admittedly this was within his "shop rights" agreement *155 with Bell Laboratories and he could not have expected a direct profit from these activities. The fact that success with this project might have enhanced his position with his employer does not support his claim to have been in a business with the intention of making a profit for himself from that business. After the fire petitioner admittedly did little work on his inventions during the remainder of 1962 and during several years thereafter. Petitioner argues that when he rented the house with more room and a basement, his activities became a business, even though they might not have been before, relying on the rationale of McLean v. Commissioner, 285 F. 2d 756. The difficulty with this argument is that there is no evidence that after the move petition er's activities became any more business-like or profit motivated than they were before. In our opinion, petitioner has not shown that he was engaged in his experimental activities as a business with a bona fide purpose or intent of making a profit therefrom. As said in $ Industrial Research Products, Inc., supra: the mere working on inventions during the year in question with no activity of offering them *156 for sale or license, would be insufficient to show engagement in an inventing business. * * * We conclude that the rent and depreciation claimed as business expenses by petitioner were not paid or incurred in carrying on a trade or business. For many of the same reasons mentioned above and others, we also conclude that the expenses claimed were not paid or incurred during the taxable year for the production or collection of income, and are not deductible under section 212 (1). The bona fide profit motive, which we find missing, must also be proved to permit a deduction under this section. In fact some of the decided cases support the theory that petitioner's burden with respect to proving a profit motive is even greater under section 212(1) than it is under section 162; that under section 212(1) petitioner must prove that the property in connection with which the expenses were claimed was held primarily for the production of income. See International Trading Co. v. Commissioner, supra; Marjorie M. P. May, 35 T.C. 865, affd. 299 F. 2d 725. [3]
*157 Our discussions above also dispose of petitioner's alternative contentions that these expenses are deductible as losses (1) incurred in a trade or business, or (2) in a transaction entered into for profit, though not connected with a trade or business, under section 165(a) and (c)(1) and (2). These losses, if they can be so characterized, were neither incurred in a trade or business nor in a transaction entered into for profit. Furthermore, as indicated, we doubt the applicability of this section to continuing expenses such as rent and depreciation with no identifiable event which terminates the purported business activity or the transaction, thus consummating a loss. See sec. 1.165-1(a)(c), Income Tax Regs.
The second issue in this case is the amount of the fire loss petitioner is entitled to deduct as a personal casualty loss under section 165(a) and (c)(3). There is no dispute that petitioner is entitled to deduct the losses suffered as a result of the fire, both with respect to his personal belongings and with respect to equipment used in his experimental activities. The only question is the amount of the deductible loss. Petitioner claimed on his *158 1962 return a personal casualty loss in the amount of $2,725 and a business fire loss in the amount of $168. At the trial he claimed additional fire loss with respect to certain welding equipment in the amount of $42.80. Respondent allowed a personal casualty loss in the amount of $1,114.50 including the loss on the items of equipment petitioner claimed as a business fire loss. The burden of proving that respondent's determination was erroneous is again on petitioner, but we do not believe he must prove the correct amount of his loss with exactitude. Respondent's regulation, sec. 1.165-7(a), provides in general that in determining the amount of loss deductible under section 165(c)(3), the fair market value of the property immediately before and immediately after the casualty should generally be ascertained by competent appraisal; and that the cost of repairs to the property damaged is acceptable as evidence of the loss of value under certain conditions. The only evidence offered on this issue was petitioner's testimony, supported in some instances by documentary evidence of the cost of some of the items damaged or destroyed in the fire and the estimated cost of repairing several *159 items damaged in the fire. Petitioner testified with respect to the cost of each item listed on the schedule attached to his return to support his claimed deductions, the length of time he had owned the articles, and the general condition thereof before and after the fire. He also testified how he had arrived at the values claimed on his return for each article, which represented 100 percent of the pre-fire value on those articles damaged beyond repair, and 50 percent of the pre-fire value of those articles which could be repaired. We recognize that the values arrived at by petitioner, and his methods of arriving at those values, did not necessarily reflect the fair market values of the articles before and after the fire, which the regulations require as the measure of the loss. We also believe that petitioner's values were considerably in excess of what a willing buyer would have paid a willing seller for a good number of the personal articles before the fire; although we are further convinced that the values placed on the articles before the fire did not exceed petitioner's cost therein. However, we think petitioner's approach to the problem was about as good as he could do under *160 the circumstances. An independent appraisal of the value of the articles after the fire would have been of little or no value. Most of the articles were personal clothing and furniture and were completely destroyed by the fire. Respondent offered no evidence as to how he arrived at his values. Under the circumstances we felt that petitioner had offered sufficient evidence to overcome the presumption of correctness of respondent's determinations and that it was up to us to determine from the evidence presented, viewed to some extent in the light of our own experience, the amount of the loss suffered by petitioner as a result of the fire. This we have done with respect to each individual item involved, and have found as a fact that the total casualty loss suffered by petitioner as a result of the fire, including damage to the equipment used in his experimental activities, was $1,635.50. Consequently, petitioner is entitled to a deduction of $1,635.50 as a casualty loss for 1962. Decision will be entered under Rule 50. Footnotes
1. All section references are to the 1954 Code unless otherwise indicated. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. No loss described in this paragraph shall be allowed if, at the time of the filing of the return, such loss has been claimed for estate tax purposes in the estate tax return. [Prior to amendment by sec. 208(a) of the Revenue Act of 1964.] The loss of value of the equipment destroyed or damaged by the fire, which petitioner claimed as a business expense, would be deductible under section 165(c)(3)↩, if not as a business expense.
2. Depreciation is actually deductible, if at all, under section 167(a), but inasmuch as it is allowable only (1) on property used in a trade or business, or (2) on property held for the production of income, our conclusions with respect to petitioner's arguments as presented would also apply to arguments under section 167(a).↩
3. Although it is not argued by the parties, we also note that amounts paid for rent which are allocable to space used for research and experimental purposes in conjunction with a trade or business are nondeductible capital expenditures. Claude Neon Lights, Inc. 35 B.T.A. 424, 442↩, unless the taxpayer elects to deduct the amounts in accordance with section 174.