**Edwin A. SNOW and Helen B. Snow, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 72–2019.

United States Court of Appeals, Sixth Circuit.

Argued April 18, 1973.

Decided July 17, 1973.

Burgess L. Doan, Cincinnati, Ohio, for petitioners-appellants; Harold W. Walker, Cincinnati, Ohio, on brief.

Irell & Manella, Lawrence M. Stone, Ronald L. Blanc, Rudolph R. Loncke, Los Angeles, Cal., for amici curiae.

Jane M. Edmisten, Tax Div., Dept. of Justice, for respondent-appellee; Scott P. Crampton, Asst. Atty. Gen., Meyer

---

Rothwacks, Bennet N. Hollander, Attys. Tax Div., Dept. of Justice, Lee H. Henkel, Jr., Chief Counsel, I. R. S., Washington, D. C., on brief.

Before EDWARDS and MILLER, Circuit Judges, and LAMBROS, * District Judge.

EDWARDS, Circuit Judge.

Petitioners (joint taxpayers) seek review of the decision of the United States Tax Court, reported at 58 T.C. 585 (June 30, 1972). The Tax Court determined a deficiency of income taxes due from taxpayers in the amount of $6,247 for the taxable year of 1966 by denying that a deduction of $9,195.11 claimed by Edwin A. Snow was properly claimed as research and experimental expenditures within the scope of Section 174 of the Internal Revenue Code of 1954. In applicable part this section says:

§ 174. Research and experimental expenditures

(a) Treatment as expenses—

(1) In general.—A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction. 26 U.S.C. § 174(a)(1)(1970).

The deductions claimed were for proportionate loss suffered by Snow as a partner in the Burns Investment Company, which was engaged in the research and development of a trash burner device.

Snow invested $10,000 in the Burns Investment Company and had made similar investments in two other companies (Courier Enterprises and Echo Development Company) in which an inventor named Trott was the actual principal. In relation to Burns Investment, however, Trott invested no cash. As a consequence, Trott was not entitled (under his agreement with other shareholders) to share in any tax deduction derived from the expenditure by Burns of some $36,000 on seeking to develop the trash burner in 1966, the year in which the company was formed.

The company filed a return electing to expense the research and development expenses pursuant to Section 174(a), and claimed a loss of $36,780.44, of which appellant Snow's share was $9,195.11.

It is undisputed that Burns Investment Company was just beginning its operation in 1966 and did not sell or offer to sell any of its products during that year. Nor did it have a patent issued or pending on the trash burner, or any income from sale of licenses or any other source. Trott's first patent application on the trash burner was filed in 1968 and a patent was issued in 1970. The Tax Court held on these facts that Burns Investment was not engaged in trade or business in 1966 and that the expenditures were not "paid in connection with" its trade or business.

The Tax Court also held that Snow was not employed in the trade or business of inventing or development of inventions because of his investment in Burns and similar investments in two other small companies similarly organized by Trott to develop two other devices.

Appellants, including amici curiae representing small business and inventors, protest the unfairness of this decision. Snow claims that he is engaged in trade or business in relation to his investments in these several companies organized to develop and exploit inventions. He also claims that his participation in Burns Investment Company by organizational management and asserted technical suggestions pertaining to the invention constituted his participating in a trade or business. In addition, he asserts (and here the amici curiae join) that any small business must start some-

---

* Honorable Thomas D. Lambros, United States District Judge, Northern District of Ohio, sitting by designation.

where and that refusal to allow first-year development expenditures is inconsistent with the congressional purpose in adoption of Section 174, which purpose was stated in part in the Congressional Record as follows:

[T]o prevent tax discrimination between large businesses having continuous programs of research and small or *beginning* enterprises. . . . 97 Cong.Rec. 4326A (1951) (Remarks of Rep. Camp). (Emphasis added.)

One other fact should be added. Snow had an income in 1966 at his principal occupation as an Executive Vice President of Procter & Gamble in excess of $200,000. As a consequence, if Section 174 applied, his investment in Burns was made as a high bracket taxpayer. Thus, as is so frequently true, two laudable public purposes are in direct conflict: 1) the Congressional purpose of stimulating research and development, including research and development on the part of inventors and small businessmen, and 2) the desirability of strict interpretation of tax laws so as to prevent unintended tax shelters.

The Tax Court founded its decision of this case on the conclusion that neither basis of Snow's claim for deductions constituted expenditures "paid in connection with a trade or business" as that phrase had been construed at the time of the Congressional enactment of Section 174.

We agree with the Tax Court that "the issue is whether they [the expenditures for research and experimentation] were paid or incurred by Snow 'in connection with his trade or business' " or the trade or business of Burns Investment Company.

The best known definition of these critical terms is that of Mr. Justice Frankfurter in a concurring opinion in Deputy v. DuPont, 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (1940), where he said, " '. . . carrying on any trade or business,' . . . involves holding one's self out to others as engaged in the selling of goods or serv-

ices." This definition was quoted and adopted by the Fourth Circuit. Helvering v. Highland, 124 F.2d 556 (4th Cir. 1942). The Fifth Circuit employed similar language, but added that "extensive activity over a substantial period of time" was required. Stanton v. Commissioner of Internal Revenue, 399 F.2d 326, 329 (5th Cir. 1968).

It seems clear to us, as it did to the Tax Court, that Burns Investment Company in 1966 was not holding itself out to others as being engaged in the selling of goods and services. It was engaged, of course, in experimental work preparatory to going into business, but the expenditures were not made (as required by Section 174) "in connection with [its] trade or business," since as of 1966 it had no product to offer.

In a somewhat different fact situation, Judge Sobeloff of the Fourth Circuit, construed the language "carrying on any trade or business" in the context of Section 162(a) dealing with ordinary and necessary business expenses:

The uniform [6] teaching of these sev-

6. Southeastern Express Co., 19 B.T.A. 490 (1930), the only authority *contra*, has not been followed or even mentioned in later Tax Court cases.

eral cases is that, even though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not "engaged in carrying on any trade or business" within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized.[7]

7. Compare concurring opinion of Mr. Justice Frankfurter, Deputy v. DuPont, 308 U.S. 498, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (1940), " '* * * carrying on any trade or business,' * * * involves holding one's self out to others as engaged in the selling of goods or services." See also the following cases construing the terms "trade or business" as used in section 174(a)(1), Internal Revenue Code of 1954, 26 U.S.C.A. § 174(a)(1) (1955), dealing with re-

search and experimental expenses: Koons v. Commissioner of Internal Revenue, 35 T.C. 1092 (1961), "'trade or business' presupposes an existing business with which the taxpayer is directly connected"; Mayrath v. Commissioner of Internal Revenue, 41 T.C. 582 (1964), "'trade or business,' is used in the practical sense of a going trade or business."

Applying this rule, we are of the view that there was no basis in the evidence for a charge permitting the jury to find that the taxpayer was in business during the period in question. We are of the opinion, therefore, that the District Court was in error in failing to hold as a matter of law that Richmond Television was not in business until 1956, when it obtained the license and began broadcasting. Until then there was no certainty that it would obtain a license, or that it would ever go on the air. Since all of the expenditures underlying the disputed deductions were made before the license was issued and broadcasting commenced, they are "pre-operating expenses," not deductible under section 162(a).

Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965).

Similarly, in our instant case we hold that the expenditures sought to be deducted by Burns Investment Company in 1966 were "pre-operating" expenses and not deductible under Section 174. We cannot hold that the comment previously quoted from Representative Camp concerning "beginning enterprises" demonstrates a Congressional intent to set aside the settled interpretation of the language "trade or business" as used in Section 174.

Appellants rely upon Cleveland v. Commissioner of Internal Revenue, 297 F.2d 169 (4th Cir. 1961). We are by no means certain that Cleveland involved any dispute over whether the joint enterprise therein concerned was engaged in a trade or business. If, however, it be read as in conflict with our view in this case, we prefer the logic of the later

Fourth Circuit holding in Richmond Television Corp. v. United States, supra, to the Fourth Circuit's earlier holding in Cleveland.

Snow also contends that he should be allowed to deduct these same expenditures (even if Burns is not held to be in business in 1966) because he was himself engaged in the business of developing inventions.

Concerning this contention of Snow's, the Tax Court said:

Snow contends that because, in addition to Burns, he was also a participant in Trott's other partnerships, Courier and Echo, which in 1966 had inventions ready for sale or licensing, he, and Trott as well, were in the trade or business of inventing, developing and marketing patentable products, and that although the Burns invention was not completed, it was a similar product, the research expenses of which should be deductible in accordance with the principle of Best Universal Lock Co., [45 T.C. 1] supra.

We note that there were no sales nor attempts to sell by Burns in 1966, 1967 nor 1968. There were no goods held for sale by Burns in the taxable year 1966. And if the other partnerships, Courier and Echo, and the inventions they developed may be considered in this connection there were no sales by either of them in 1966 nor 1967. While Snow said these inventions were ready for sale or licensing, there is no evidence that any effort was made to sell them. Snow testified that such a sale was Trott's function. Trott did not mention any attempt to offer them for sale.

\* \* \* \* \* \*

In Stanton v. Commissioner, [of Internal Revenue] 399 F.2d 326 (C.A. 5, 1968), affirming a Memorandum Opinion of this Court, the taxpayer sought to deduct research and experimental expenditures incurred in the development of a "storm proof" boat. The Court of Appeals concluded that the taxpayer's efforts as an inventor

lacked that degree of continuity and regularity that is essential before an activity can be found to constitute a trade or business. The taxpayer's efforts, spread over a number of years, were irregular and sporadic, and his revenue was negligible.[3]

3. Cf. Myron E. Cherry, 26 T.C.M. 557 (1967) ; Charles H. Schafer, 23 T.C.M. 927 (1964) ; William S. Scull, II, 23 T.C.M. 1353 (1964).

Although a taxpayer may be in the business of doing research and experimentation, or of being an inventor, it is necessary that this be related to the development or improvement of existing products or services, or to new products or services in connection with a going trade or business.

■ While it is true that a taxpayer may be engaging in more than one business, George A. Butler, 36 T.C.No. 1097 (Sept. 19, 1961), Snow's activities as shown by this record were clearly not such as to warrant his claiming to be engaged in the business of inventing. A somewhat less unsubstantial claim might be an assertion that he was engaged in the business of development of inventions by investment. In this connection the record shows that he had made minority stockholder investments in three companies ($10,000 in Burns, $5,000 in Courier, and $15,000 in Echo). In 1966 none of these companies had a product for sale to the public, although Courier and Echo had each developed a device to the point where they were available for licensing.

If investing in development of inventions could properly be held to be carrying on a trade or business, we would agree with the Tax Court that Snow's investment activities in relation to these three companies were not sufficiently continuous or regular enough when taken together to represent his engaging in carrying on a trade or business.

We believe, however, that the Supreme Court decision in Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963), forecloses our consideration of Snow's claim to be engaging in a trade or business as an investor in inventions. In *Whipple* the taxpayer was engaged full time (not sporadically in time off from a $200,000 executive post) in management of his investments in corporations in which he had a *majority* interest. He claimed a deduction for a bad debt on an unpaid loan he had made to one of the corporations which went bankrupt. The Supreme Court rejected the bad debt deduction under Section 23(k)(1) because it held taxpayer's activities in investing and managing his investments did not constitute a trade or business.

The Court said:

Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged. Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive to the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer himself. When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of the corporation. Even if the taxpayer demonstrates an independent trade or business of his own, care must be taken to distinguish bad debt losses arising from his own business and those actually arising from activities peculiar to an investor concerned with, and participating in, the conduct of the corporate business.

If full-time service to one corporation does not alone amount to a trade or business, which it does not, it is

difficult to understand how the same service to many corporations would suffice. To be sure, the presence of more than one corporation might lend support to a finding that the taxpayer was engaged in a regular course of promoting corporations for a fee or commission, see Ballantine, Corporations (rev. ed. 1946), 102, or for a profit on their sale, see Giblin v. Commissioner of Internal Revenue, 227 F. 2d 692 (C.A.5th Cir.), but in such cases there is compensation other than the normal investor's return, income received directly for his own services rather than indirectly through the corporate enterprise, and the principles of *Burnet* [Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397], *Dalton,* [Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389,] *du Pont* and *Higgins* [Higgins v. Commissioner of Int. Rev., 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783] are therefore not offended. On the other hand, since the Tax Court found, and the petitioner does not dispute, that there was no intention here of developing the corporations as going businesses for sale to customers in the ordinary course, the case before us inexorably rests upon the claim that one who actively engages in serving his own corporations for the purpose of creating future income through those enterprises is in a trade or business. That argument is untenable in light of *Burnet, Dalton, du Pont* and *Higgins,* and we reject it. Absent substantial additional evidence, furnishing management and other services to corporations for a reward not different from that flowing to an investor in those corporations is not a trade or business under § 23(k)(4). We are, therefore, fully in agreement with this aspect of the decision below. *Id.* at 202–03, 83 S.Ct. at 1174. (Footnotes omitted.)

Under this holding we feel compelled to affirm the denial of the deductions sought by Snow as a result of his investment and managerial activities in the three companies concerned.

For the reasons set forth above, we affirm the judgment entered by the Tax Court. We have not sought to distinguish between those aspects of the Tax Court's decision which we affirm because they are findings of fact which are not clearly erroneous, Commissioner v. Duberstein, 363 U.S. 278, 289–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), and those which we agree with as conclusions of law since we would affirm all relevant findings and conclusions on either basis.