ANTHONY R. and HELEN C. FURMANSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Furmanski v. Comm'r
Docket No. 1311-71 United States Tax Court T.C. Memo 1974-47; 1974 Tax Ct. Memo LEXIS 272; 33 T.C.M. (CCH) 225; T.C.M. (RIA) 74047; February 25, 1974, Filed. Frank J. Cicone, for the petitioners. Alan R. Herson, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioners' income taxes as follows: Year
Deficiency 1966
$2,774.18
1967
6,767.60
Total
$9,541.78
The issues for decision are the following: 1. Whether amounts petitioners paid to their three children, in excess of the $2,700 allowed as a deduction by respondent for 1966 and the $1,200 so allowed for 1967, are deductible *275 as compensation for services rendered. 2. Whether petitioners are entitled to deduct $5,211 spent for research supplies in 1967.
3. Whether the depreciation petitioners claimed on automobiles used in business in 1966 and 1967 was excessive. 4. Whether petitioners used more than 20 percent of their residence for business purposes. GENERAL FACTS Some of the facts have been stipulated and are so found. Petitioners, husband and wife, resided in Los Angeles County, California, when they filed their petition herein. They filed joint Federal income tax returns for calendar years 1966 and 1967 with the Western Service Center at Ogden, Utah. Petitioner-wife is a party to this action solely by virtue of having filed a joint return, and hereafter "petitioner" shall refer to petitioner-husband only. Prior to 1968 petitioner performed his own tax planning. 1. Children's Compensation. FINDINGS OF FACT Petitioners have three children: Stanley, born in 1946, who was an undergraduate student at Stanford during 1966 and 1967; Martin, born in 1949, who was a high school student; and Helen, born in 1944, who was a college student. All three children were claimed as dependents *276 in 1966. In 1967 Helen married, and only Stanley and Martin were claimed as dependents. On December 29, 1966, petitioners and their two sons formed the Institute for the Study of Biophysical Medicine (hereinafter "Institute") which both petitioners and respondent treat as a partnership for tax purposes. The Institute was established to carry on certain research and development work described below. It was able to obtain surplus materials at a lower cost than petitioner could, and petitioner believed the Institute would be a more prestigious and permanent vehicle for carrying on research and publishing papers than would petitioner personally. Any equipment to be developed as well as purchased was to be the property of the Institute. The Institute filed no partnership return for 1966, but filed a partnership return for the calendar year 1967 showing the following: Gross receipts on sales
$ 4,600
Less: Cost of goods sold or operations
(4,417)
Gross profit
183 Less: Travel expense
183 Ordinary income
183 "Cost of goods sold or operations" was reported to consist of $3,724 of materials and supplies and $693 of transportation charges. The four partners *277 were each reported to have zero capital accounts and the only asset of the partnership at the beginning and end of the year was reported to be $235 of cash. The Articles of Association of the Institute follow the general form of articles for a California non-profit corporation, and do not indicate the proportionate interests of the partners in capital or the manner in which the partners are to share in profits and losses of the partnership. Petitioner is a doctor of medicine specializing in neurology and psychiatry. He maintains an office in Encino, California, where he conducts his private practice of medicine and receives patients. During the years in issue petitioner deducted the following amounts which he claims represent compensation paid for services performed by his children in connection with his business (only a portion of which was allowed by the Internal Revenue Service): Child
Activity
Amount
Amount
Claimed
Allowed
1966
Stanley
Research
$ 2,400
$ -0- Martin
Research, reparing equipment
2,280
1,200 and answering
service
Helen
Secretarial and answering service
2,400 1,500 1967
Stanley
Research
$ 4,450
$ -0- Martin
Research, reparing
equipment,
4,350 1,200
and answering
service
Helen
Secretarial
1,500
-0- $ 10,300
$ 1,200
*278 Petitioner both (1) treated patients in his office and (2) performed electro-diagnostic services [1] in his office and at various hospitals throughout the San Fernando Valley. The machinery petitioner used was unsatisfactory and inadequate in that it was too bulky to move around easily and broke down frequently as a result of being moved and shaken. He wanted to redesign it for portability and to improve it. Also the electromyographic equipment required inserting needles into the patient, and petitioner wanted to design a machine that could perform the same function without the use of needles. Petitioner decided to embark upon the redesigning and improving of the machinery he used in his profession, and the development of new machines. These activities were carried on during 1966 and 1967 by petitioner with the help of his sons. However, at least after the Institute was formed on December 29, 1966, these activities were the function of the Institute. The Institute purchased equipment and services were performed by the sons for the Institute. It was understood that petitioner would furnish the funds to the Institute for such purchases, and petitioner did so. *279 Stanley became interested in and investigated the electron microscope which is used in teaching hospitals in connection with the biopsy of muscles and nerves. In 1966 Stanley invented a magnetic lens for deflecting charged particles for an electron microscope, and on September 16, 1966, filed a patent application on Institute stationery, some three months before the Institute was formally formed. This patent application was still pending at the time of trial. The patent, if issued, will be Stanley's property and not that of petitioner or the Institute. During 1966 and 1967 Martin and Stanley were also involved in various research projects to improve the electro-diagnostic equipment used by petitioner in his practice. Martin also repaired his father's electro-diagnostic equipment when it malfunctioned. The above activities (except repair of petitioner's equipment and Stanley's work on the magnetic lens) were undertaken on behalf of the Institute and were not part of petitioner's medical practice. Amounts paid Stanley and Martin with respect to their research activities were not ordinary and necessary business expenses of petitioner. There is insufficient evidence on which *280 to base a finding that the Institute was engaged in any business in 1966 or 1967. Its principal activities during this period appear to have been research and development of equipment. While the Institute reported $4,600 of gross receipts in 1967, there is no showing of how this income was earned. Petitioner employed a 24 hour a day commercial telephone answering service for his office during the years in issue, for which he paid $50 a month. He did not employ such a service for his home. At home when petitioner was not there or did not wish to be disturbed, members of his family would answer the telephone and be as helpful as they could to patients who called, although they could not, of course, prescribe medicine. Petitioner had instructed them in how to handle patients' calls. These family members would also handle petitioner's other business calls. Petitioner paid Helen and Martin in 1966, and Martin in 1967 for telephone answering services performed at home. He paid nothing to his wife or Stanley for such help. In 1966 Helen performed secretarial services for petitioner in his office. Helen received $1,500 in 1966 for the secretarial services she performed during *281 1966. She also received $1,500 in 1967. Petitioner's children did not work for any one other than petitioner and the Institute during 1966 and 1967. Petitioner testified that he contracted and paid for the services of his children on an annual stipend basis during 1966 and 1967. He did not keep hourly or daily records of when his children worked for him or for the Institute, and neither he nor the Institute withheld any Federal income taxes or social security taxes with respect to the amounts paid the children. OPINION Petitioner claims he is entitled to deduct as an ordinary and necessary business expense amounts he paid to his children in 1966 and 1967. Respondent claims the amounts paid, to the extent they exceeded amounts allowed by respondent, were not for ordinary and necessary expenses connected with petitioner's business, but were nondeductible personal family support payments. Section 162(a)[2] provides in part that there shall be allowed as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, *282 including a reasonable allowance for salaries or other compensation for personal services actually rendered. This is allowable even though the employer is the father and the employee is his child. Rev. Rul. 73-393, I.R.B. 1973-39, 9. Where there is a family relationship, however, the facts require careful scrutiny to determine whether there was in fact a bona fide employer-employee relationship, and whether the payments made grew out of that relationship or out of the family relationship. The payments made to Martin and Stanley, allegedly for research activities, being made in advance, were not based upon the quantity or value of such research activities and did not represent compensation therefor. Furthermore, we have found as a fact that the research activities carried on by Martin and Stanley at least after December 29, 1966 when the Institute was formed were performed on behalf of the Institute and not on behalf of petitioner. Stanley's work on the electron microscope appears to have been carried on for his own benefit and the patent, if and when issued, *283 will be his. In any event, with respect to this work, Martin and Stanley were not petitioner's employees and payments to them were not his deductible trade or business expenses. Petitioners introduced no evidence tending to show that the payments in question made after December 29, 1966 were assumed by petitioner pursuant to any partnership agreement, and in the absence of any such evidence, we cannot find that petitioners can deduct such amounts as their distributive share of partnership loss, nor do petitioners claim they can. See Robert J. Wallendal, 31 T.C. 1249, 1252 (1959); cf. Frederick S. Klein, 25 T.C. 1045, 1051-1052 (1956).
Compensation paid Martin for repairing his father's electro-diagnostic equipment used in his father's business was a deductible business expense and has been allowed by respondent for each of 1966 and 1967. With respect to telephone answering services allegedly performed by Martin and Helen, petitioner has failed to carry his burden of proof. Rule 142, Tax Court Rules of Practice and Procedure. Children normally answer the family home telephone. Many of the calls were undoubtedly for the children; the number or extent *284 of petitioner's business calls is not disclosed by the record. Strangely, petitioner paid only Martin and Helen for answering the telephone and not Stanley or his wife. Petitioner admits his children were not qualified to practice medicine in 1966 and 1967, and we are not convinced by petitioner's testimony that they could perform any service in connection with answering the telephone that could not ordinarily be performed by high school or college age children of similar intelligence with similar instruction by their father on what to do when patients called. Petitioner failed to prove what hours and what days Martin and Helen actually performed their alleged telephone answering services. There is no indication in the record that such services were required of them at specific times or that they in any was limited the hours when these two children could be away from the house pursuing their own interests. In fact, we are given no specific information at all. Petitioner simply has not carried his burden of proof in connection with these expenses. With respect to Helen's secretarial services, respondent allowed a deduction of $1,500 for 1966 and nothing for 1967 on the ground *285 that petitioner had adequate records to support the deduction for 1966 but no records to support such a deduction for 1967.Petitioner contends that the $1,500 paid Helen in 1967 was for services rendered in 1966, but again he has failed to carry his burden of proof. Helen was married in the spring of 1967 and presumably did not continue her services after that time. Petitioner's vague and unsupported statement without more we find unconvincing. Finally, we note that petitioner failed to withhold income taxes from the alleged wages paid to his children as required by section 3402(a). He also failed to withhold social security taxes on the wages of those children who were over 21 (Helen in 1966 and 1967 and Stanley in 1967) as required by the Internal Revenue Code. Sections 3101(a), 3102(a), 3121(a) and 3121(b) (3) (A). These facts tend to negate petitioner's contentions that the payments were intended as and in fact constituted payments for bona fide business employment. Moreover, the facts that petitioner paid his children a flat amount determined at the beginning of the year and not *286 based on the services actually performed during the year, and that the children were totally dependent on petitioner for support (except, presumably, Helen after she married), convinces us that the disallowed payments were more in the nature of support payments than payments for any services performed. 2. Research Supplies. FINDINGS OF FACT The Institute was established as a partnership separate and apart from petitioner's medical practice in order to become eligible to apply for and obtain government surplus materials for use in research projects, to publish research papers, and to operate as a permanent vehicle for performance of research. In order to carry out various research and development activities, the Institute paid $5,211 in 1967 for necessary materials and supplies which were used in five or six different research projects. Petitioner, pursuant to his understanding with the other family members, furnished the funds to the Institute for these purchases. Petitioner has failed to show that the Institute engaged in business during the years 1966 and 1967. As found above, the Institute deducted $3,724 as the cost of materials and supplies on its 1967 partnership *287 return, and reported its taxable income as zero. It filed no 1966 return. Petitioners deducted $5,211 spent by the Institute for research materials and supplies on their 1967 return. Respondent disallowed the deduction on the grounds that the expenditure had been made by Institute rather than petitioners. OPINION We have found as a fact that Institute and not petitioners paid the $5,211 in issue to purchase research supplies and materials needed in certain research projects being carried out by the Institute. Our finding of fact is supported by petitioner's testimony. On its 1967 partnership return the Institute deducted $3,724 as the cost of supplies and materials purchased by it. The discrepancy between the $3,724 and $5,211 and the extent of overlap, if any, between those amounts, is not explained in the record or the briefs. Petitioner, however, alleged that he and the Institute had an oral agreement that allocated all expenses of the Institute to petitioners, and that such allocation was not made for tax avoidance purposes. Section 704; see Frederick S. Klein, supra. The record is lacking in detailed support for a finding that such an oral contract *288 existed between petitioners and the Institute, and since the alleged oral contract was between petitioner and a partnership comprised of his own family, careful scrutiny is required. See Kuney v. Frank, 308 F.2d 719 (C.A. 9, 1962). However, petitioner was the only apparent source of funds for the Institute's work, and we may assume for present purposes that such an understanding did in fact exist. However, the record does not disclose the nature of the Institute's income reported on the partnership return, or that the Institute was in fact engaged in any bona fide operating business during 1966 or 1967. Business deductions presuppose a demonstration of business activity. C. Fink Fischer, 50 T.C. 164, 171 (1968); Henry G. Owen, 23 T.C. 377 (1954); see Edwin A. Snow, 58 T.C. 585 (1972), affirmed 482 F.2d 1029 (C.A. 6, 1973) certiorari granted (January 7, 1974). Moreover, on the limited record before us, we are unable to determine whether the expenditure, even assuming the Institute was in business or even assuming that *289 the requirements of section 174(a) could be met without a demonstration of business activity, would have been a capital expenditure to the Institute rather than a deductible expense. Section 174(c). Under the circumstances we are simply without evidence sufficient to support a finding that petitioner has met his burden of demonstrating entitlement to the $5,211 deduction or any part thereof. We conclude that petitioners are not entitled to the $5,211 business expense deduction claimed on their 1967 return. 3. Automobile Depreciation. FINDINGS OF FACT Petitioners owned the following automobiles during 1966 and 1967: 1966
1967
1960 Thunderbird
1960 Thunderbird
1963 Corvette
1963 Corvette
1965 Morgan*
1965 Morgan*
1964 Pontiac*
1967 Corvette
1966 Pontiac*
1966 Pontiac (part of year)*
1967 Pontiac (part of year)*
During the years in issue petitioner used the cars marked with asterisks in his medical practice (including commuting). In 1966 he used the three such cars about a equally, and when he was not using them, other members of the family used them for nonbusiness purposes. In 1967 he used all three cars about equally. When he was not *290 using them, all but the 1967 Pontiac were used by other members of the family for nonbusiness purposes. On his 1966 return petitioner deducted depreciation of $2,383 on the 1966 Pontiac only, using 100 percent of cost for basis, a three year useful life and the double declining balance method of depreciation. On his 1967 return petitioner deducted depreciation of $2,584 on the 1967 Pontiac only, again using 100 percent of cost for basis, a three year useful life and the double declining balance method. Respondent allowed depreciation of $595 on the 1966 Pontiac in 1966, and $646 on the 1967 Pontiac for 1967, using the double declining balance method in each year. However, respondent determined that only one-third of cost was depreciable because each car was used only one-third of the time by petitioner, and the appropriate useful life was four years instead of three years. No depreciation was allowed on the 1965 Morgan or 1964 Pontiac on the grounds that these cars had been fully depreciated in earlier years. OPINION We agree with respondent that petitioner's depreciation calculation was erroneous, and since there is nothing in the record which indicates that respondent's *291 calculations are not reasonable, respondent's depreciation deductions are accepted. During each of the years in issue petitioner used three automobiles in connection with his medical practice. However, on his 1966 and 1967 returns he deducted depreciation as though he used one automobile 100 percent of the time. In fact, in 1966 his wife also used for personal purposes the automobile which, for depreciation purposes, they represented was used 100 percent for business purposes. In 1967 he used the automobile he represented he used 100 percent for business purposes for commuting as well as for business. Petitioner should have depreciated a portion of the total basis of each of these cars in proportion to the amount he used them for business purposes as compared to their total use for the part of the year they were in use. Moreover, there is nothing in the record to show that three years is a more reasonable useful life than the four years used by respondent. Useful life is determined by reference to a taxpayer's history of useful lives with similar property. Section 1.167(a)-1(b), Income Tax Regs. *292 The record does not disclose which automobiles petitioner owned and used in his business prior to 1966. Petitioner has again failed to carry his burden of proof. We hold respondent's determinations to be reasonable. 4. Business Use of Residence. FINDINGS OF FACT Petitioner purchased his residence in 1952 for $29,500. He had claimed deductions of $10,984 for depreciation on it prior to 1966. The house contains four bedrooms, four bathrooms, a den, a living room, a kitchen, a service area, and a large workshop. The only two rooms that had any business connection were the living room and the den. These rooms had bookcases and a cabinet which contained medical books, and a spectrometer. In addition, the den contained a sofa, a table and a stereo, and the living room contained a sofa and two tables. Petitioner used the living room and den to prepare lectures and to prepare for teaching and for the care of patients. Petitioner's family ate their meals at the table in the den. The family entertained guests in both the living room and the den. OPINION Petitioner contends that 60 percent of his residence is used for business purposes, whereas respondent asserts that *293 only 20 percent of the residence is used for business purposes. Petitioner has not established that respondent's allocation is erroneous. Indeed, the evidence suggests it was fair. Only 2 of nine rooms and four bathrooms had even partial business use. Therefore petitioner is not entitled to any depreciation with respect to his residence because he had claimed and been allowed more than 20 percent of the cost of the residence as depreciation deductions prior to 1966. Section 1016. The question presented is one of fact, and again petitioner has failed to carry his burden or proof. For this reason, respondent's determination is adopted by the Court. Decision will be entered under Rule 155. Footnotes
1. The electro-diagnostic services involve the use of electricity in the diagnosis of pathological conditions. Petitioner used in particular the electromyograph and electroencephalograph in his work. ↩
2. All Code references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩